THE HOUSTON AND TEXAS CENTRAL RAILROAD CO. *v.* ANDREW KNAPP ET AL.

1. JUDICIAL KNOWLEDGE—EVIDENCE.—Where, in a general act of the Legislature, the corporate existence of a railroad in this State is recognized, the court will take judicial knowledge of the existence of the corporation.

2. PARTIES—ACTION.—Trespass may be maintained by an heir in possession, without administration, for injury to land inherited and for damage to crops growing thereon.

3. EVIDENCE—PRACTICE.—When the objection in the court below to evidence of a witness appears affirmatively from the bill of exceptions to have been based on specific grounds which did not involve an objection to witness giving his opinion, that ground of objection will not be heard for the first time on appeal.

4. FACT CASES.—See statement of this case for evidence of too unsatisfactory a nature to support the verdict.

APPEAL from Robertson. Tried below before the Hon. A. S. Broadus.

April 28, 1873, Andrew Knapp and others brought suit against the Houston and Texas Central Railroad Company, alleging themselves to be owners of two tracts of land in Robertson county, one on Mud Creek, containing two hundred and eighty and one-half acres, and the other on Sandy Creek, containing sixty acres. Plaintiffs charged that on the 24th of April, 1871, defendant "negligently and carelessly constructed its railroad, and so negligently used said road as to throw out and upon the land of plaintiffs the waters of Mud Creek"; that defendant dug a ditch, and by it so diverted the water from its channel as to throw it upon said land, thereby destroying growing crops to the extent of $800; that on April 3 defendant dug a ditch, and thereby diverted the

waters of Mud Creek and a slough and threw them with great force on the sixty-acre tract, destroying crops of plaintiffs Andrew Knapp and Mary Knapp of the value of $200, and to the damage of said land $1,200, and to the great injury of Andrew Knapp $1,400.

The charges of injury resulting from the overflow of the sixty-acre tract were, by amendment, abandoned; and the suit as to Mary Knapp was, on application of her co-plaintiffs, dismissed.

The plaintiffs proved on the trial that they inherited the land from Henry Knapp, deceased, and were in possession of the same. The construction of the embankment diverting the waters of the creek from the original channels was established. The first witness testified that seventy-five acres of the Knapp land was overflown on one occasion, but did not know whether it was subject to overflow before the construction of the railroad ditch or not, and that the land, which was now worthless, would be worth $10 an acre if not subject to overflow.

Andrew Knapp testified that the waters of Mud Creek, before the railroad dug its ditch and embankment, flowed in three channels; that after the ditch and embankment were constructed, the waters were diverted into one channel, and thus caused it to overflow in 1871 and 1872. [The cause was tried in 1874.] He further testified that the freshets in April of 1871 and 1872 washed away some of the fencing and crops; "that he thought he was damaged by the overflow of 1871 to the amount of $600, and by the overflow of 1872, $800; that his damage generally amounted to $2,000." On cross-examination, this witness stated that about twenty-five or thirty acres was the amount actually overflowed in 1871 and 1872; that it was caused by the railroad ditch and embankment; that about seventy acres was rendered valueless; but the evidence does not disclose how this resulted. He further testified that there was no overflow before or since 1871 and 1872; that the land was worth, before the road

was built, $5 per acre, and now would be worth $12 per acre if it did not overflow, and that he was compelled by the overflow which injured him in 1871 and 1872 to plant his crops over.

W. J. Gammill, for plaintiffs, testified that he knew the land; that he never saw any of it under water, but judged from appearances that about forty acres of it now overflows; that the land is now comparatively worthless, but would be worth from $12 to $15 per acre if it did not overflow; that when the water was permitted to run in the original channels, before the railroad ditch and embankment were constructed, it overflowed the lands on the opposite side of the creek, which were lower, before it overflowed plaintiff's land.

James S. Hanna testified that he had known the land long before the road ditch and embankment were constructed,— since 1856; that all the bottom was subject to overflow before the ditch was dug and the embankment constructed; it overflowed then just above the Knapp farm; had seen it there over four hundred yards wide before the ditch was dug.

Lemuel Barton, for defense, testified that just above the Knapp land he had seen the creek bottom overflow, before the embankment was made, for five hundred or six hundred yards in width.

Jack Jones testified that he knew the creek bottom well; that before the road was built all the creek bottom overflowed in high freshets.

D. H. Francis, county surveyor, testified that he knew the land; had surveyed it; that the railroad construction work, embankment, and ditch do not and cannot cause an overflow of plaintiffs' land; that they have nothing to do with causing the overflow; that the land of Knapp which has been overflowed does not exceed twenty-five acres.

Logan, an old settler, knew the land well before the road was built; knew that it always overflowed just as bad before the road was built as it does now; the road work, embank-

ment, &c., do not cause the overflow; had seen the water waist-deep on Knapp's place before the embankment was built.

Ross testified that he owned a farm on Mud Creek two miles below the Knapp land; that Mud Creek bottom always overflowed during freshets; that in 1870 and 1871 it was half a mile wide above the Knapp farm, and covered the entire bottom; it swept away rails witness had on the second bottom above the culvert and embankment made by the railroad; that the railroad construction work had nothing to do with causing the overflow above or below it; that it was a perfect sea of water, and no ditching or bank would affect or control it.

Bergen testified that he knew Mud Creek bottom before the road was built; that it always overflowed during freshets, as much before as since the road was built, and no damage to the land from overflow could have been caused by the work done by the railroad.

No evidence was offered of the incorporation of the railroad company.

The jury returned the following verdict: "We, the jury, find for plaintiff three hundred dollars ($300) as damages to the crops and one thousand dollars ($1,000) as damages to land," from which the defendant below appealed. The assignments of error are manifest from the opinion.

*Davis & Beall*, for appellant.

I. The first error which we notice is contained in the eighth and ninth instructions asked by plaintiff and given by the court, as follows: "The court judicially knows that the defendant is an incorporated company; that the defendant has by answering admitted its incorporation." In order to correct this error, the defendant prayed the following instruction: "In this case the jury are instructed that to entitle plaintiff to recover, it was incumbent on him to prove the incorporation of defendant; and in the absence of proof on that point,

you will find for the defendant." The refusal of the court to give this instruction to the jury is assigned for error.

We regard this question as conclusively settled by the former adjudications of this court. In Holloway *v.* Railroad Co., 23 Tex., 467, it is clearly held, that in a suit by a corporation created by a private act of the Legislature, in order to maintain the action it is necessary to aver and prove that it is a body corporate, constituted by competent authority. In the case at bar, the plaintiff alleged the incorporation of defendant, but introduced not a scintilla of proof of the fact. The rule is well settled in New York, Virginia, and some of the other States, that in suits by a body politic, either on a contract or to recover property, it must at the trial, under the general issue, prove the fact of incorporation. (Ang. & Ames on Corp., 4th ed., 643, and cases cited.) But further citation of authority we deem unnecessary, the rule having been fully sanctioned by the decisions of this court. (Bank of Alabama *v.* Simonton, 2 Tex., 531.)

"This court cannot judicially take notice of a domestic corporation created by private act."

The plaintiff, being a witness in his own case, was asked, "What damages were sustained to the land by the building of defendant's road?" The question called for the mere opinion of the witness, and virtually took from the jury their province of determining the amount of damages sustained. It substituted the conclusion of the witness for the unbiased judgment of the jury upon the facts in evidence; and we think the answer operated to mislead the jury to defendant's prejudice. It is not competent for the witness to state his mere opinion of the damages; he must state the facts, and the jury will deduce therefrom their own conclusions. (Sedg. on Dam., 2d ed., pp. 589, 590; Buffum *v.* New York Railroad Co., 4 R. I., 221; Brunswick and Albany Railroad Co. *v.* McLaren, 47 Ga., 547; 42 Ala., 83; 10 Ind., 120; 4 Ohio St., 580; Greenl. Ev., (Redf. ed.,) 440*a*, 440*b*.)

II. The fifth and sixth assignments of error are well taken.

The verdict of the jury is clearly contrary to the law, unsupported by the evidence, and excessive and extortionate in the amount of damages.   The plaintiff relies upon his own testimony to prove his damages; and we insist that, stretching it to its utmost tension, it fails to support the finding of the jury. Upon cross-examination, he swears that the land overflowed in the years 1871 and 1872; that it never overflowed before or since; that only about twenty-five or thirty acres overflowed at that time; that about seventy acres was cut off and rendered valueless; that it was worth before the road was built about $5 per acre, and that it is now worth about $12 per acre if it did not overflow.   Now, the plaintiff having furnished us the data, it becomes a mere calculation to ascertain from his evidence the extent of damage to his land.   It will be seen that his land lies north of the creek, and, by the testimony of himself and other witnesses, is higher than the bottom land near the creek; so much so that only about twenty-five acres is subject to overflow, either before or since the road was built.   It is therefore quite difficult to discover how seventy acres is rendered valueless.   But suppose you give him the full value of this land at his own price, say $12 per acre, this makes only $840, which falls short of the amount assessed by the jury $160.   This result is certainly liberal enough, as it gives the plaintiff all the damages he claims, when he states facts and does not draw upon his imagination for his estimated damages.   Does it occur to the court how the seventy acres is rendered valueless, when the plaintiff swears that it does not overflow, and is only cut off during a freshet, and that the land has never overflowed but twice, before or since the construction of the road?   At most, it could only be cut off during two or three days during a freshet, and from his evidence freshets seldom occur.   But, again, he swears that he made crops on the land during the years of 1871 and 1872, and that the overflow merely caused him to replant the crops each year.   This is certainly not a case for punitive damages, and we feel that

we hazard nothing in saying to this honorable court, that, adhering to the measure of strict compensation, the verdict cannot be supported upon any principles of just reasoning, even upon the testimony of the plaintiff himself.

If we look to the plaintiff's evidence to test the correctness of the verdict of the jury in assessing damages to the crops, we are still more amazed at the reckless manner in which they have trampled upon the rights of the defendant. The only proof of damages to crops results from having to plant over twenty-five or thirty acres of land. Did he lose the entire rent of his land? If he is to be believed upon oath, he only was put to the trouble and expense of planting over the twenty-five or thirty acres. But if you give him full rent for the land, it would not amount to more than half the amount assessed by the jury. Will this court sanction a verdict which is so manifestly at war with the sworn testimony of the party in whose favor it is rendered? We rather think that your honors will apply the rule that has been laid down in similar cases by other courts, that where, in the assessment of damages against a railroad company, it is apparent to the court that injustice has been done through some mistake or misapprehension of the jury, the verdict should be set aside. (2 Vroom, 179; 24 Barb., (N. Y.,) 273.)

In sharp contrast to the interested evidence of the plaintiff, is the clear, consistent, and unbiased testimony of the five witnesses of the defendant, including the evidence of an expert, the surveyor of the county.

Recognizing the full force of the rule in ordinary cases, that in conflict of testimony all issues of fact are concluded by the verdict of the jury, we yet insist that this rule is not absolute, but has its just exceptions. In the case at bar, the application of these just and righteous powers which the law has put into the hands of the court is earnestly invoked to prevent the great and monstrous wrong perpetrated upon the rights of the defendant in this cause.

*William H. Hamman,* for appellees.

I. Did the court below err in taking judicial notice of the incorporation of appellant?

If the law as to judicial knowledge is worth anything, surely it applies to the case before the court. (Robertson *v.* Teal, 9 Tex., 344; Chambers *v.* Fisk, 22 Tex., 507.)

II. On examination the court will see that appellees were the owners and in possession of the land described in their petition in 1871 and 1872, when the damage complained of was done; that the crop which was destroyed was their property. It was, therefore, proper to bring suit in the name of the plaintiffs, without showing that there was no administration on the estate of Peter Knapp, deceased, and no necessity for administration. (1 Red. on Law of Railways, sec. 21, pp. 348, 349; 1 Hill. on Torts, sec. 16, p. 573, and authorities cited.)

III. The court will not fail to discern that all the facts necessary to enable the jury to make up their own estimate of the amount of damage sustained by appellees were in evidence, and that no prejudice was done to appellant by the question and answer complained of. On cross-examination the witness did state all the facts on which his opinion was based and by which his opinion was tested, and upon which the jury no doubt found their verdict. Besides, every statement made by a witness embraces more or less of opinion and conclusion of the party testifying, and the right of cross-examination and asking leading questions is intended to correct any evil which might otherwise result from the testimony of witnesses.

As to the verdict, it is the conclusion of twelve men from the body of Robertson county, sustained by the action of the court below, who heard the testimony of the witnesses and who were acquainted with the case—not as it appears in the record, which is always very imperfect, but as it was made by the evidence as it came from the lips of living witnesses.

GOULD, ASSOCIATE JUSTICE.—1. The court did not err in

taking judicial knowledge of the incorporation or corporate existence of the defendant. In more than one of the general and public acts of the Legislature that corporate existence has been recognized, and in that way, if in no other, was judicially known to the court. (Laws 8th Leg., 1861, p. 60; Laws 9th Leg., 1862, pp. 44, 47.)

2. The plaintiffs were entitled to sue for damages to the land after it had descended to them and was in their possession as the heirs of their father, and for damages to their crops cultivated on the land so held by them. No administration on their father's estate was necessary to enable them to sue for such injuries.

3. Appellant claims that the court erred in permitting Andrew Knapp, as a witness, to state his opinions as evidence as to the amount of damages sustained, and refers to the bill of exceptions. A reference to the bill of exceptions shows that the evidence was objected to on other grounds not urged in appellant's brief, but not on the ground that the witness could only testify as to facts and could not give his opinion of the amount of damage.

4. But while the admission of this evidence is not an error of which appellant can avail himself, the evidence was, of itself, of too unsatisfactory a nature to support the verdict, especially when the facts stated by the same party, as well as by all the other witnesses for plaintiffs, show conclusively the error of his opinion as to the amount of damage. It is evident that not more than seventy or seventy-five acres of land, at the outside, was damaged; and if the opinion of the plaintiff as to the amount of damage be accepted, no reasonable construction of the evidence will fix the damages to the seventy or seventy-five acres as high as $1,000. In our opinion, the evidence is clearly insufficient to support the verdict as to the amount of damage, and the court below erred in refusing to set that verdict aside. For this error the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.