### Galveston, Harrisburg & San Antonio Railway Company v. Nettie Smith.

#### No. 6918.

1. **Pleading—Fact of Incorporation of Defendant Company Must be Alleged.**—The almost universal practice in suits against a railway company is to allege the corporate capacity of the defendant. It would seem that if the provision of the statutes on the subject does not positively require such allegation it contemplates such mode of procedure.

2. **Charge—Servants of Warehousemen.**—In suit for value of a trunk and its contents destroyed by fire while in a railway depot the testimony showed that employes of the railway company in charge of the depot were engaged in saving the property during the fire, in the discharge of their duties. It was proper to refuse an instruction that the railway company would not as warehouseman be responsible for the negligence of its servants about matters not in line of their duty.

3. **Defective Charge Upon Negligence.**—The court instructed the jury that if the railway company held the trunk, etc., sued for as warehouseman it would be responsible, and the jury should find for plaintiff if the testimony showed a want of ordinary care for the safety of the goods; also that the burden of proof was upon the plaintiff. *Held*, it was error to fail to charge on request that the use of ordinary care if found would require a verdict for the defendant.

4. **Passenger's Baggage—Liability of Railway Company.** — It is the duty of a railway company in regard to baggage of a passenger which has reached its destination, to have the baggage ready for delivery upon the platform at the usual place of delivery until the owner in the exercise of due diligence can call for and receive it; and it is the owner's duty to call for and remove it within a reasonable time. If he does not so call for and receive it, it is the company's duty to put it into their baggage room and keep it for him, being liable only as warehouseman and for failure to use ordinary care. The reasonable time within which the owner must call for it is directly upon its arrival, making reasonable allowance for delay caused by the crowded state of the depot at the time; and the lateness of the hour makes no difference if the baggage be put upon the platform.

5. **Charge.** — See instance of charge upon a state of facts not appearing in the record.

6. **Libel—Words not Actionable—Words Used by Attorney.**—In an action for destruction by fire of the trunk, etc., of plaintiff by the defendant railway company on whose train she had been a passenger, interrogatories were propounded to take her depositions. The attorney for the defendant propounded to her the following cross-interrogatory: "Are you acquainted with Mrs. ——, who was formerly connected with the Sunny South? If so, where is she now, and do you not think she is a charming lady?" By amendment plaintiff alleged that these words were libelous. She asked damages actual and exemplary. On exceptions the matter was stricken from the petition. *Held:*

1. The words were not actionable, not being libelous.

2. If they were, the defendant company would not be liable for their use from the act of the attorney, as it was outside of his duty and not alleged to have been directed or approved by the defendant.

APPEAL from Guadalupe. Tried below before Hon. George Mc-Cormick.

The opinion states the case.

*T. M. Humphreys* and *Burges & Dibrell,* for appellant.—1. When a corporation is sued the party suing must allege that such corporation was duly incorporated. Rev. Stats., art. 1190; S. & B. Plead. and Prac., sec. 12; 51 Texas, 244.

2. If the servants of the warehouseman are present in the night-time at a fire, acting not in pursuance of their contract of employment but as other disinterested parties, the warehouseman is not responsible for any negligence of which such servants may be guilty. Tracy's Railway Dig.; Aldrich v. Railway, 100 Mass., 31; Story on Bailments, sec. 450a, note 2.

3. In the case of baggage the rule is that the responsibility as carrier continues until the owner has reasonable time and opportunity to take it away. After that the responsibility as carrier ceases and the carrier becomes a mere warehouseman, and liable as such only. Rev. Stats., art. 283; Railway v. Capps, 2 Ct. App. C. C., sec. 35; Quimit v. Henshaw, 35 Vt., 605; Hutch. on Car., secs. 707, 712; Edw. on Bailments, sec. 227; Story on Bailments, secs. 565, 604; Powell v. Myers, 26 Wend., 591; Railway v. Belknap, 21 Wend., 354.

4. It is always error to charge the jury upon any point in a case upon which there has been no proof offered, and if the court submits an issue to the jury not made by the pleadings and the evidence this is good grounds for reversing the judgment.

5. The common carrier must deliver the goods intrusted to it at all hazards except the act of God or the public enemy; and when the act of God is relied upon to excuse the carrier it must be shown to be the proximate cause of the loss and without any concurrent negligence on the part of the carrier. Bigham v. McDowell, 69 Texas, 100; Andrews v. Smithwick, 20 Texas, 111; Austin v. Talk, 26 Texas, 130; Andrews v. Marshall, 26 Texas, 212; Cook v. Dennis, 61 Texas, 246.

*John Ireland,* for appellee.—1. It was not necessary to expressly allege the incorporation of the defendant. Railway v. Shepherd, 21 Texas, 274; De la Garza v. Bexar Co., 31 Texas, 484; Ins. Co. v. Seeligson, 59 Texas, 3.

2. Allowing the trunk to remain in possession of the company over night would not convert the service into that of a warehouseman. 2 Redf. on Railways, 39, 40; Redf. on Carr., 73; Railway v. Capps, 2 Ct. App. C. C., 34.

3. Warehousemen are bound to use ordinary care, no matter what caused the loss—whether God or man. The law of the case was properly given to the jury. Morgan v. Dibble, 29 Texas, 117; Dibble v. Morgan, 1 Wood C. C. R., 410.

The agent must not contribute to the loss: Cool. on Torts, 640.

4. The court erred in sustaining exceptions to plaintiff's cause of action for damage set out in her amended petition, filed on the 7th of November, 1888, for slander and libel. It was a question for the jury as to what was meant by the question whether plaintiff knew Mrs. W———, and if she did not think her a very nice person. Such a question was impertinent, slanderous, and not privileged. There is no such thing in our practice as a misjoinder of causes of action for money. On the contrary, all forms of action being abolished, it is the policy of the law to limit suits and settle all matters in one action, and as to such ruling and as to so much of the cause plaintiff asks a reversal.

Both the original cause of action and that set up in the amendment are claims sounding in damages. Some good reason then must be shown why they can not be joined. Hagerty v. Scott, 10 Texas, 535; Ponton v. Bellows, 22 Texas, 681; Henderson v. Morrill, 12 Texas, 3; Clegg v. Varnell, 18 Texas, 294; Egery v. Power, 5 Texas, 506; Chevalier v. Rusk, Dall., 611; Carter v. Wallace, 2 Texas, 206.

This has been the law since the Act of 14th February, 1860. Sayles' Civ. Stats., art. 1190. Because the question complained of had no proper place in the cause, or was impertinent, takes it out of the pale of privileged matter. Cool. on Torts, 213. A party can not relieve himself from charge of libel and slander by saying, after the mischief is done, that he did not mean it, or he did not intend it. He may give in evidence an immediate explanation or retraction in mitigation, but not in defense. Trabue v. Mays, 3 Dana, 138.

MARR, JUDGE, *Section A.*—On the 28th day of May, 1888, the appellee Nettie Smith filed suit in the District Court of Guadalupe County, and alleged that she took passage on the train of appellant at San Antonio on the 9th day of May, 1888, paid the usual fare between said points, and checked her trunk to Seguin, the point of her destination; that she arrived at the Seguin depot between 5 and 6 o'clock in the afternoon; that the depot at Seguin is situated about one mile from the town proper, and that when she arrived at said depot she did not take charge of her trunk, deeming it unnecessary to do so for so short a stay in Seguin; that said railway company never delivered said trunk to her nor accounted to her for it; that said trunk contained personal property of the value of $988.70, and that the value of said trunk was $20 without its contents. Appellee further alleged that she was damaged in the sum of $500 by interruption of her business, detention in

the State, and hotel bills, caused by the failure of appellee to deliver said trunk.

On the 7th day of November, 1888, the appellee filed in said cause a paper indorsed "Plaintiff's amended plea and for exemplary damages." This paper was filed as a trial amendment, and alleged that on the 22d day of June, 1888, the appellant made, wrote, published, and filed in this cause a certain slanderous, libelous, vicious writing, as follows: "Are you (meaning plaintiff) acquainted with Mrs. W———, who was formerly connected with the Sunny South? If so, where is she now, and do you not think she is a charming lady?"

This was a question propounded in a cross-interrogatory to the plaintiff by defendant's counsel, contained in the depositions of the plaintiff which were filed in the cause. Upon that her counsel predicated a claim for $50,000 as actual and $20,000 as exemplary damages, alleging in substance that the question was wholly irrelevant and impertinent, and was intended to impute to the plaintiff a want of chastity (by innuendo) by intimating and charging that she was an intimate associate or admirer of "Mrs. W———," who is alleged by the plaintiff to have been of bad repute in this particular, etc. This "plea" upon exceptions of the defendant was stricken out, and this action of the court is made the basis of an earnest cross-assignment of error in behalf of the plaintiff. There was a verdict in her favor for $600, the value of her trunk and its contents. This property was destroyed while in the possession of the defendant's servants and in its baggage room, at Seguin, Texas, by a fire which consumed the entire depot building on the night of May 9, 1888. The defendant pleaded that the destruction of the property was the act of God and an unavoidable accident, and that it held the same as a warehouseman and was only liable as such, etc. There was evidence that the fire may have been caused by lightning.

1. The defendant specially excepted to the plaintiff's petition, because it had nowhere alleged that the defendant was or is an incorporated company or duly incorporated, etc., which the court overruled, and this ruling is first assigned as error. The petition does not contain such an averment nor any other tantamount thereto in legal contemplation. The only description of the defendant's character is that the plaintiff "took passage at San Antonio on the Galveston, Harrisburg & San Antonio Railway," and that said railway company has an office and local agent in the town of Seguin. Holloway v. Railway, 23 Texas, 465. Whether this defect in the petition and the action of the court in holding it to be sufficient constitute a ground for the reversal of the judgment we do not deem it necessary to determine in this case, but would suggest the propriety of an amendment of the petition before another trial to obviate the objection. The almost invariable practice in suits of this character is to allege the corporate capacity of the defendant, and it would seem that if the provision of the statutes on the

subject does not positively require such an allegation it certainly contemplates such mode of procedure. The reasons for this averment, if there are no others, are found in its purpose, which is to fix the venue of the suit and to inform the court and its officers upon whom the service of the process should be made, as well as to show the capacity of the defendant to sue and be sued, etc. There are authorities to the effect that it is an indispensable allegation. Ins. Co. v. Davidge, 51 Texas, 244; Railway v. Douglass, 2 Ct. App. C. C., sec. 28; Rev. Stats., arts. 1190, 1198 (secs. 21, 21b), 1223. We have been referred to no general law of this State recognizing "the Galveston, Harrisburg & San Antonio Railway Company" as an incorporated body. Railway v. Knapp, 51 Texas, 569.

2. We do not think that there was any error in the action of the court as pointed out in the second assignment, as follows: "The court erred in refusing to give the jury the following special charge, viz.: 'The jury are instructed that warehousemen are not responsible for neglect of their servants to rescue goods in the warehouse from destruction by fire in the night when such servants are present but not in the course of their employment.'" This charge was inapplicable under the evidence, which showed, as we think, that the employes referred to in attempting to extinguish the fire and rescue the property at the depot were acting in the course of their employment and for the defendant, and also were in charge of the buildings and their contents, though not actually present when the fire began. These facts distinguish the present from the case of Aldrich v. Railway, 100 Massachusetts, 31, relied upon by appellant's counsel.

3. The third and sixth assignments of error, which relate to the same subject, will be considered together, and are as follows respectively, viz.:

"(3) The court erred in refusing to give to the jury the following special instruction asked by appellant, viz.: 'If you believe from the evidence that the trunk and its contents belonging to the plaintiff were duly delivered at the depot of defendant at Seguin, the point of destination, and plaintiff had an opportunity to take possession thereof but did not do so, then the duties of defendant were discharged and said company was no longer liable as a common carrier; and if plaintiff left said trunk to be kept in the baggage room of defendant, while it was so kept defendant was only liable as a warehouseman; and if it was then by the burning of said baggage room destroyed, you will look to the evidence to see if defendant was guilty of carelessness or negligence that caused the fire; and if defendant was not guilty of either carelessness or negligence, then defendant is not liable for said loss, and in that event you should find for the defendant.'"

"(6) The court erred in failing and refusing by the general charge or by any of the special charges asked by the defendant to charge the

jury upon any statement of case that would change the liability of defendant from that of a common carrier to that of a warehouseman.''

Whether these omissions of the court below constitute reversible errors or not will depend, of course, upon the issues in the law as made by the pleadings and arising under the evidence adduced. .

The plaintiff alleged that she took passage at San Antonio on defendant's railway for Seguin; and purchased and paid for a ticket to said point of destination and checked her trunk to said point. The plaintiff testified as follows: ''I took a check from the railway company when I took passage in San Antonio. The number of the check was 2179. The trunk was checked to Seguin. I left my trunk in the depot at Seguin. I did not take it with me to the hotel because it costs 50 cents drayage and I did not wish to incur this expense. It is true that I opened my trunk at the depot at Seguin and took from it a list of names of people who owed the Sunny South. That is all I took from it. I arrived at Seguin about 6 o'clock in the evening. I could have taken my trunk from the depot had I seen fit to have done so.''

J. M. Abbott testified as follows on the point in question, viz.: ''In May, 1888, I was station agent for the Galveston, Harrisburg & San Antonio Railway Company at Seguin. I remember the circumstance of the arrival at Seguin of the plaintiff. She arrived at Seguin about 5 o'clock p. m. on the eastbound train. She got off at Seguin and at the same time her trunk was put off upon the platform. She came to me and, presenting her check, said she wished to open her trunk for the purpose of taking something from it. I gave her permission, and she opened her trunk while on the platform and took something from it. I do not knew what she took from the trunk. The plaintiff left the trunk on the platform and said that she would not take it with her to town.''

The testimony of A. C. Bartholomae is to the same effect.

The trunk was then placed in the baggage room of the defendant by its servants in charge thereof.

Bartholomae, who was shown to have been at the time of the fire the warehouseman and baggagemaster of the defendant, also testified, that after plaintiff had taken the paper from the trunk ''she then said she would not take her trunk—that she would leave it there until morning. I told her she could do so.''

We are of the opinion that the evidence presented sharply the issue of the limited liability of the defendant as a warehouseman from the time plaintiff had the opportunity to take her trunk and failed to do so; and for aught that appears she declined to do this solely as a matter of economy and convenience to herself. The court in its general charge defined a warehouseman to be ''one who undertakes to store and care for goods belonging to another,'' etc., and that if the defendant received and accepted said trunk at Seguin from the plaintiff as a

warehouseman and thereafter failed to use ordinary care (which the court defined) to protect it and thereby it was destroyed, they would find for the plaintiff, but on the other hand the court nowhere instructed the jury in its charge distinctly to find for the defendant if in such contingency it appeared that the defendant had used due and proper care after the trunk was left by the plaintiff and placed in the warehouse. The court gave a special charge upon the request of defendant as to the burden of proof, but this did not cover the issue sufficiently nor supply the omission. Besides, the general charge does not inform the jury at what time and under what circumstances the liability of the defendant as a common carrier in reference to the baggage would terminate and that as a warehouseman begin; and the general definitions given by the court would scarcely enable an ordinary jury to properly solve that question. Hence the importance of the special instruction we are considering, and which was directly applicable to the issue under the evidence, and would, if it had been given, have supplied the omissions in the general charge.

The rule on this subject generally applied and recognized in reference to the baggage of the passenger has been expressed in the following language: "It is the duty of a railway company, in regard to the baggage of a passenger which has reached its destination, to have the baggage ready for delivery upon the platform at the usual place of delivery until the owner in the exercise of due diligence can call for and receive it; and it is the owner's duty to call for and remove it within a reasonable time. If he does not so call for and receive it, it is the company's duty to put it into their baggage room and keep it for him, being liable only as warehousemen; and the reasonable time within which the owner must call for it is directly upon its arrival, making reasonable allowance for delay caused by crowded state of the depot at the time; and the lateness of the hour makes no difference, if the baggage be put upon the platform."

This quotation is from the opinion of the Supreme Court of Vermont delivered in the leading case of Quimit v. Henshaw, 35 Vermont, 605, and which was adopted by the Court of Appeals of this State in the case of Railway v. Capps, 2 Court of Appeals Civil Cases, section 35. Our statutes on the subject appear to relate only to ordinary goods or freight, not to the baggage of a passenger which he carries along with him. Sayles' Civ. Stats., arts. 281–283, 4237. We believe that the foregoing statement is the true doctrine concerning the baggage of a passenger and the liability of the carrier when it becomes a warehouseman as above stated, and that thereafter if the property is destroyed the company would only be liable for a failure to exercise ordinary care. 2 Ct. App. C. C., sec. 36; 1 Am. and Eng. Encyc. of Law, pp. 1043–1045, note 1; 2 Redf. on Railways, p. 46 et seq.; Railway v. Boyce,

24 Am. Rep., 268; Same Case, 73 Ill., 510; Huger v. Railway, 21 Am. and Eng. Railway Cases, 308.

We conclude that the rulings of the court which are complained of in the two assignments now under consideration were materially erroneous and prejudicial to the legal rights of the appellant.

There is another view of this question which might be taken perhaps if the facts proved had warranted it. This will be next considered.

4.   The fifth assignment of error is that "The court erred in giving the special charge asked by plaintiff, as follows: 'If the proof shows that defendant received the trunk to keep until the plaintiff should return to the depot to take passage on the road, it had the trunk as baggage, and its liability is that of a common carrier and not as warehouseman.' There being no proof upon this point "

The allegations of the petition are sufficient to show that when the plaintiff stopped at Seguin she did so only for the night, and intended to resume her journey eastward upon the next day, but there is no proof of such intention which we have been able to find in the statement of facts, or that she informed defendant's agent of such intention. We have already inserted the entire evidence on that subject. She in her own testimony says nothing about proceeding on the journey. On account of the absence of proof of any new contract we are constrained to hold that the above special charge should not have been allowed. Whether this charge would have been proper had it been applicable under the evidence we do not deem it necessary to determine on this appeal, as that question is not presented, as will be seen by the assignments, and beside its correct solution is not entirely free from difficulty. As we are not required to decide the point at this time we refrain from doing so, and from intimating any opinion on the subject, though there are authorities in closely analogous cases which appear to sustain the principle of law announced in this instruction. 2 Ct. App. C. C., sec. 34; Quimit v. Henshaw, supra; Trans. Co. v. Belknap, 21 Wend., 361; Green v. Railway, 41 Iowa, 410; Hickox v. Railway, 31 Conn., 281; 2 Redf. on Railways, p. 53, sec. 6.

We find no other error in the rulings of the court of which the defendant complains.

5.   We do not think that there is anything disclosed in the cross-assignment of the plaintiff that would indicate any error in the action of the court in reference to this matter. The language made the basis of the libel is not in our opinion defamatory or actionable, if it be conceded that the question was not privileged. The innuendo is not justified by the question propounded and can not stand alone. If libelous, then it was the act of the attorneys; unauthorized by the defendant. The defendant is not responsible for an independent tort committed without its authority and in no way connected with its proper defense, as must be admitted to do away with the privilege of counsel. But we

are clearly of the opinion that counsel committed no tort and that there is nothing in the "amended plea for exemplary damages." In the interchange of *civilities* the plaintiff seems to have been oblivious of all laws of libel, and profoundly enjoyed "the liberty of speech" guaranteed in the Bill of Rights.

We think that on account of the errors we have enumerated the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted June 23, 1891.