THORNTON et ux. v. DANIEL et al.
(No. 541.)

(Court of Civil Appeals of Texas. El Paso. March 30, 1916. Rehearing Denied April 20, 1916.)

1. APPEAL AND ERROR ☞1170(8)—HARMLESS ERROR—ORAL CHARGE—DIRECTED VERDICT.
    Under Court of Civ. App. rule 62a (149 S. W. x) providing that no case shall be reversed for error at the trial unless the appellate court shall be of the opinion that it was reasonably calculated to cause the rendition of an improper judgment, or probably prevented the appel-

lant from making a proper presentation of the case to the appellate court, orally instructing a verdict does not require a reversal unless the failure to instruct in writing and to give plaintiffs' attorney an opportunity to examine the charge and to make his objections and exceptions as required by Rev. St. 1895, arts. 1970, 1971, as amended by Acts 33d Leg. c. 59 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1970, 1971), prevented a proper presentation of the case on appeal.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4066, 4543; Dec. Dig. ☞1170(8).]

2. WAREHOUSEMEN ☞24(2)—LOSS OF GOODS —FIRE.
    Where a warehouseman delivered the goods intrusted to him for storage to another in whose warehouse they were burned, the latter is liable if the fire was caused by his negligence; the liability not being dependent upon whether the delivery of the goods to him was a conversion by the first warehouseman.
    [Ed. Note.—For other cases, see Warehousemen, Cent. Dig. § 49; Dec. Dig. ☞24(2).]

3. WAREHOUSEMEN ☞34(5)—LOSS OF GOODS —FIRE—NEGLIGENCE—EVIDENCE.
    The mere fact that plaintiffs' goods were destroyed by fire in a warehouse does not necessarily show negligence by the warehouseman.
    [Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 76, 77; Dec. Dig. ☞34(5).]

4. PLEADING ☞149 — ADMISSIONS—ACTIONS AGAINST WAREHOUSEMAN — CROSS-COMPLAINT.
    Where plaintiffs, whose goods were burned while they were in the warehouse of another to which they had been sent by the original warehouseman sued both warehousemen, the answer of the first, which denied the negligence alleged by plaintiff, and then in case there should be recovery against him filed a cross-action against the second warehouseman, in which he adopted the plaintiffs' allegations as to the negligence of the latter, is not an admission by the former as against plaintiffs of the negligence alleged.
    [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 301; Dec. Dig. ☞149.]

5. WAREHOUSEMEN ☞34(7)—LOSS OF GOODS —EVIDENCE—NEGLIGENCE.
    Evidence from which it could be inferred that a fire which was apparently extinguished by the fire department before it injured plaintiffs' goods in a warehouse was started by the negligence of an employé of the warehouseman is not sufficient to show negligence as the cause of a fire in the warehouse three or four hours later which destroyed plaintiffs' goods.
    [Ed. Note.—For other cases, see Warehousemen, Cent. Dig. § 79; Dec. Dig. ☞34(7).]

6. WAREHOUSEMEN ☞34(5) — ACTIONS AGAINST—BURDEN OF PROOF—NEGLIGENCE.
    Where plaintiffs pleaded that their goods were burned in defendant's warehouse, the burden is on them to prove that the fire was caused by the warehouseman's negligence.
    [Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 76, 77; Dec. Dig. ☞34(5).]

7. WAREHOUSEMEN ☞24(2) — ACTIONS AGAINST—CONVERSION—REMOVAL.
    Where a warehouse receipt was silent as to the place of storage, but there was uncontradicted testimony for plaintiff that it was orally agreed that the goods should be stored in a particular warehouse, it was a conversion for the warehouseman to have them removed to a warehouse belonging to another, and, if they were there burned, the original warehouseman is liable to the owner, regardless of the second

warehouseman's negligence, and it was error for the trial court to instruct a verdict for the first warehouseman because of plaintiff's failure to establish negligence.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. § 49; Dec. Dig. ☞24(2).]

Appeal from El Paso County Court; W. D. Howe, Special Judge.

Action by A. L. Thornton and wife against R. L. Daniel and others. Judgment for defendants on a directed verdict, and plaintiffs appeal. Reversed and remanded as to defendant Daniel, and affirmed as to the other defendants.

G. L. & Atlas Jones, of El Paso, for appellants. A. R. Grambling, C. W. Croom, and John L. Dyer, all of El Paso, for appellees.

WALTHALL, J. Appellants, A. L. Thornton and wife, brought this suit in the justice court, and by appeal it was tried in the county court at law, to recover of appellees, R. L. Daniel, E. L. Peyton, and John M. Wyatt, for goods destroyed by fire, and alleged that R. L. Daniel was engaged in the private warehouse business in El Paso, and that, as such warehouseman, he received from appellants for storage in his warehouse for hire certain household goods, described, stating their values. Appellants allege two separate and distinct deliveries of the goods to Daniel, one on March 20, 1912, and one in February, 1913; that when said goods were received for storage it was agreed that Daniel was to store them in his warehouse; that at some time unknown to appellants and without the consent of either of them Daniel removed said goods from his warehouse and stored them in a warehouse owned and operated by appellees Peyton and Wyatt, doing a similar business in El Paso; that while the goods were stored in the warehouse of Peyton and Wyatt they were destroyed by fire.

Appellants alleged that Daniel, Peyton, and Wyatt and each of them failed to use the ordinary care required of them by law for the safe keeping and safe storage of said goods, in that they stored said goods in the Peyton and Wyatt warehouse, which was an old, worn building constructed principally of wood, easily destroyed by fire, was dark, unequipped with lighting appliances, and was unfit and unsafe for the purposes of a warehouse for household goods; that they employed unskilled, incompetent, and careless warehousemen to store, handle, and inspect property stored therein, and that at the time of the fire that destroyed the building and goods Peyton and Wyatt caused an inexperienced and incompetent workman and employé to go into said warehouse to remove some property when there were no lights in said warehouse and no lantern or other lights provided, and that said employé then negligently struck a match or other combustible matter while looking for said property and while surrounded by packing and other

highly inflammable material, and thereby negligently set fire to said packing and said building; that Peyton and Wyatt failed to use ordinary care in failing to subdue and put out said fire after it originated, but permitted it to smolder and again start to the extent that it completely destroyed the building and appellants' goods.

Appellee Daniel admitted the fact of receiving the goods for storage, but denied that at that time he was engaged in the warehouse business, but alleged that it was his custom, known to appellants, that he would restore goods received by him at a suitable storehouse, and did store them with Peyton and Wyatt, then conducting a warehouse which was a reasonably safe place to store goods, and that in doing so exercised ordinary care. He denied the negligence complained of, filed a cross-action against Peyton and Wyatt, and for the purpose of his cross-action adopted the allegations of negligence pleaded by appellants, and prayed that, if he should be liable in any way, he have judgment over and against Peyton and Wyatt. Peyton and Wyatt answered by demurrer and denial of the facts alleged in the petition and in the cross-action of Daniel. The trial was to a jury, and after appellants' evidence was heard, on motion of appellees, the court orally instructed a verdict in favor of appellees, to which appellants objected and excepted. Appellants in due time filed their motion for a new trial, which was heard and overruled, and appellants gave notice and perfected their appeal.

[1] Appellants' first assignment is to the action of the court in orally instructing the jury. Article 1970, as amended by chapter 59, p. 113, Acts 33d Leg., provides in part as follows:

"In all civil cases the judge shall, unless the same be expressly waived by the parties to the suit, prepare and in open court deliver a written charge to the jury on the law of the case." Vernon's Sayles' Ann. Civ. St. 1914, art. 1970.

Article 1971, as amended by the same chapter as above, provides in part as follows:

"The charge shall be in writing and signed by the judge." Vernon's Sayles' Ann. Civ. St. 1914, art. 1971.

The trial judge orally instructed the verdict. Was it reversible error to orally instruct the verdict? In McAllen et al. v. Alonzo et al., 46 Tex. Civ. App. 449, 102 S. W. 475, the Fourth Court of Civil Appeals said:

"If the peremptory instruction to find for defendants had been warranted by the law and evidence, we would not likely perceive any harm in giving the instruction orally, though the statute requires charges to the jury to be in writing, and it is thought best in every instance to be governed by it."

To the same effect is Schwartzlóse v. Mehlitz, 81 S. W. 68. It seems to us that, whatever error there was in giving a peremptory instruction orally, it would not lead to a reversal, unless it is apparent that it may have injuriously affected appellants' case.

Berry v. Railway Co., 72 Tex. 620, 10 S. W. 726. It is true that under the present law as amended by the Thirty-Third Legislature (chapter 59), in addition to the requirement that the charge shall be in writing, the charge must be submitted to the respective parties or their attorneys for inspection and a reasonable time given them in which to examine it and present objections thereto, and objections not so made and presented shall be considered waived; yet we think it still follows that, unless it is apparent that a failure to extend the opportunity to examine and present objections to the charge injuriously affected appellants' case, the mere giving of an oral charge would not be reversible error. Under rule 62a (149 S. W. x), unless the appellate court shall be of the opinion that by giving an oral charge amounted to such a denial of the rights of appellants as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court, the judgment should not be reversed on the ground merely that the peremptory charge was not in writing.

[2] Appellants refer us to Rex v. James, 131 S. W. 248, to sustain their proposition that their contract with Daniel to store and the fact that he did store their goods in his warehouse and the removal by Daniel, without their consent, of the goods to the warehouse of Peyton and Wyatt, where the goods were destroyed by fire, constitutes a cause of action against him as a depositary bailee. In that case Rex deposited his goods with Heyck as warehouseman. Later Heyck sold his warehouse in which the goods were stored to James, who received the warehouse with the goods therein, and in turn sold the warehouse and delivered the warehouse and Rex', goods to Miller, who converted the goods to his own use. The appellate court said that Heyck received the goods under circumstances making him liable as a depositary bailee, and held that Heyck and James were guilty of negligence in the delivering of goods to Miller in the absence of evidence that Miller was a responsible person and in view of Miller's announced purpose of disposing of the goods. Under Rex v. James and under Roberts v. Yarboro, 41 Tex. 453, and Nelson v. King, 25 Tex. 663, it seems to be settled in this state that appellants could sue and recover the property or its value from Peyton and Wyatt had there been negligence or a conversion of the goods by them, although they are not parties to the contract of bailment. If by negligence of Peyton and Wyatt the goods were destroyed by fire, we think appellants could recover of Peyton and Wyatt. The liability of Peyton and Wyatt to either Thornton or to Daniel would depend upon the ques-

tion of their negligence, and not merely upon the question of Daniel's conversion by delivery of the goods to them.

[3] Appellants alleged that Daniel, Peyton, and Wyatt were guilty of negligence, and stated the grounds which, if proved, would possibly constitute negligence vel non. This brings us to the only real issue of fact in the case, not including the question of fact in the storage contract with Daniel: Was the evidence sufficient to justify the court in submitting the issue of negligence to the jury? The bare fact that the goods were destroyed by fire does not necessarily show the negligence charged.

[4] Appellants suggest that Daniel's answer and cross-action admitted negligence. Daniel denied the paragraph in plaintiffs' petition alleging negligence. This denial put plaintiffs to the proof, although Daniel, for the purpose of his cross-action against Peyton and Wyatt, and only in the event plaintiffs recover judgment against him, adopted appellants' allegation of negligence. Bauman v. Chambers, 91 Tex. 108, 41 S. W. 471; Silliman v. Gano, 90 Tex. 637, 39 S. W. 559, 40 S. W. 391. We think Daniel's admission of the fact of negligence only conditionally— that is, only in the event the proof should entitle appellants to recover against him— in view of his previous denial of negligence, could not be taken as an admission of the fact of negligence even as against himself. To hold otherwise would destroy Daniel's right to file inconsistent pleas. We do not understand Bosse v. Cadwallader, 86 Tex. 344, 24 S. W. 798, as holding differently.

[5] The appellants in their brief do not quote nor refer us to the evidence of any witness which, in our opinion, tends to establish any of the grounds of negligence charged, and we have found none in the statement of facts, other than the one hereinafter discussed. There is no proof that the warehouse was old, worn, or principally constructed of wood. It was equipped with electric lights and fire extinguisher. No proof was offered on the issue that the building was unfit for the purposes of a warehouse, or, if unfit, that such condition was conducive to fire, nor on the issue that the labor used was unskilled, nor that there was present any combustible material other than that used in wrapping the goods stored. There is no evidence at all as to whether appellees did or did not exercise diligence to prevent the fire to again start and grow after the fire department apparently put out the first fire.

There is only one issue of negligence charged upon which there is even a semblance of proof. Appellants and Daniel charged that one of the employés of Peyton and Wyatt struck a match while looking for some property stored in the warehouse, and by so doing caused the fire. The witness Bagley was the only witness who testified on that issue. He wanted to remove some goods he had stored,

and Peyton called a Mexican helper to go with witness to locate and point out the goods. Bagley's goods were stored on the second floor and close to the stairway. Bagley said:

"The room itself was as light as an ordinary room. Concerning what I did there and what the employé did in hunting for my goods on that occasion, * * * I was looking for box No. 14. I could not place the box, and in going through them we came to some boxes in this corner near the stairway where there was not sufficient light to read the numbers on the boxes. I endeavored to turn one box, but had difficulty, so I called the Mexican to move the box so I could see if it was box No. 14. I stepped out and went around to the other side of my furniture to look there while he was getting the box out. In probably a minute or less he called to me, 'Fire!' As soon as he called my attention to this I saw there was a small fire running up the back of some furniture; the furniture having been wrapped in excelsior and paper, so that it was highly inflammable. * * * I knew of no noise that was made just prior to the fire that would indicate a fire being started. Just before the fire the Mexican went to the place where I had just been to move out this box, he understanding what I was after; that I was endeavoring to find this number. I cannot state what the Mexican did; I know the events before and after; I saw no direct movements of the Mexican. * * * My eyesight is perfectly normal, but I could not see the box number when I was looking for it. As to what I saw or heard, as to how he told me what the number of the box was, I left him and was on the other side of the pile of furniture, probably about as far as the length of the jury box, and he called me the number of the box, and immediately after that some exclamation that conveyed to my mind that there was fire. * * * As to whether I heard any noise just before I saw the blaze, I heard nothing aside from what he said when he called my attention to the fire. There was no fire there while I was looking at it, and no light by which the box could have been seen. * * * The first I knew of the fire was the flame in my goods. I suppose legally I have no personal knowledge or information as to what caused the fire. I did not see what caused it. I did not hear what caused it. * * * I was several feet away, and the furniture was piled between me and the fire. * * * I did not see any fire before the Mexican got there. I was in exactly that place before the fire. I was away about a minute or a minute and a half, just enough to walk around the pile looking on the other side. I did not have anything to do with starting that fire."

The fire department was called, and apparently extinguished the fire. Appellants' goods were not injured or burned by that fire. About 3½ or 4 hours thereafter a second fire occurred. As to the second fire the witness Bagley said:

"Apparently, the fire was from the inside of the building. I do not know anything about the origin of the second fire."

[6, 7] The second fire is the one which destroyed appellants' goods. Bagley is the only witness that testified as to the origin of the fire. Appellants insist that, where the evidence shows the delivery of the goods to the warehousemen and the goods are destroyed by fire, a prima facie case of negligence is made, and the duty to explain the origin of the fire and excuse themselves from negligence is with the warehouseman. The cases we have examined are in conflict on the point.

In Kight v. Wrightsville, etc., R. R. Co., 127 Ga. 204, 56 S. E. 363, and Wardlaw v. South Carolina Ry. Co., 11 Rich. (S. C.) 337, it is held that one acting in the capacity of warehouseman must show how the fire occurred, and if this is not shown the warehouseman might be held liable for the loss. We think, however, the weight of authority is that the bailor has the burden of showing that the warehouseman was guilty of negligence where the proof shows a loss of the goods by fire, as a presumption of negligence does not arise from the mere occurrence of fire. Our own courts have held that the warehouseman is not liable for the loss of the goods unless it be proved that the loss was occasioned by the negligence of the warehouseman, and the burden of proving the negligence is upon the bailor. T. & P. Ry. Co. v. Capps, 2 Willson, Civ. Cas. Ct. App. § 36, and cases there cited; also G., H. & S. A. Ry. Co. v. Smith, 81 Tex. 479, 17 S. W. 133.

In Texas & Pacific R. R. Co. v. Morse, 1 White & W. Civ. Cas. Ct. App. § 414, the court said:

"Where the proof shows a total default in delivering the goods, or a failure to account for their nondelivery, a prima facie case of negligence is made out, and the burden of proof is there shifted to the defendant to rebut this prima facie negligence by evidence that the loss did not happen in consequence of his neglect to use all that care and diligence that a prudent or careful man would exercise in relation to his own property. * * * In this case the loss of the goods was accounted for when demanded by appellants showing they had been destroyed by fire, and the burden was upon the plaintiff to show that the fire was the result of want of ordinary care on the part of defendant or its employés."

Appellants and Daniel allege the removal of the goods by Daniel from his warehouse and the storage in a warehouse owned and operated by Peyton and Wyatt, and that while so stored all of said goods were burned in said warehouse of Peyton and Wyatt. These allegations had the effect to relieve Peyton and Wyatt of allegation and proof that they were warehousemen, and that, as such warehousemen, they had the goods stored and the destruction of the goods while in their warehouse by fire. As to Peyton and Wyatt there was no issue of fact tendered either by appellants or Daniel except the question of negligence in the destruction of the goods while in their warehouse, unless they can be charged, under the pleading and proof, with Daniel, in whatever there might be of a conversion of the goods, if any, by the wrongful transfer from Daniel's warehouse to that of Peyton and Wyatt. There is nothing in the pleadings and proof to suggest a wrongful act on their part, other than the allegation of negligence in the destruction of the goods by fire. Under the above authorities the burden of proof on the issue of negligence was on appellants as to Daniel, and on appellants and Daniel as to Peyton and Wyatt. Failing to discharge that burden, there was, it seems to us, no error in in-

structing the jury as to Peyton and Wyatt. We have arrived at a different conclusion, however, as to Daniel. The written contract for the storage of the first delivery of the goods is an ordinary receipt for the goods for storage at owner's risk of damage by fire, for which appellants agreed to pay $1 per month storage. However, appellants alleged in their petition that when Daniel received the goods it was understood and agreed between the Thorntons and Daniel that Daniel was to store said goods in his own private warehouse, and that he wrongfully stored them in the warehouse of Peyton and Wyatt. On the first delivery of the goods for storage A. M. Thornton testified, without objection, that he went to Daniel's office and arranged with him to take the goods from his office and put them in his (Daniel's) warehouse. Mrs. Thornton testified that she called up Mr. Daniel or some one in his office and instructed him to get the goods (the second delivery) at Mrs. Van Epps' which she had instructed Mrs. Van Epps to turn over to him, and to store them with the other goods he had of hers on Myrtle avenue. Mrs. Van Epps testified that she gave Mr. Daniel the instruction she had from Mrs. Thornton and that they were to be stored in Mr. Daniel's warehouse. While the receipt for the goods did not mention the place where they were to be stored, the evidence is uncontradicted that the agreement between appellants and Daniel was that the goods were to be stored in Daniel's warehouse on Myrtle avenue. The record does not show a written contract or receipt for the second consignment of goods delivered. The uncontradicted evidence is that all of the Thornton goods were first stored in Daniel's warehouse on Myrtle avenue, and thereafter, without the knowledge or consent of the Thorntons, transferred to the warehouse of Peyton and Wyatt, where they were destroyed by fire.

Daniel offered no evidence on the facts alleged by him in his petition. Under the case of Rex v. James, supra, Daniel having received the goods under a contract to store them in his own warehouse, and having actually stored them in his own warehouse under said agreement, was a depositary bailee, and any transfer of the goods by him to any place for storage other than his own warehouse, without the knowledge and consent of appellants, is in legal effect a conversion of the goods. To the same effect is Sims v. Chance, 7 Tex. 569; Barnett v. Tonnies (Mo. App.) 180 S. W. 1000; Cooley on Torts (3d Ed.) pp. 1132, 1133, holding that the bailee is bound to keep within the terms of his bailment. A contract is a matter of arrangement of the parties to it, and one of the parties cannot, without the consent of the other, substitute something else in its stead, even though the one substituted is more beneficial to either or both of the parties.

Our conclusion is that the trial court was in error in instructing the jury to find for the defendant Daniel. We are of opinion that Daniel, by his action in intrusting the possession of the goods to another warehouseman and placing the same in a warehouse other than his own, breached his contract of bailment, and is liable for the destruction of the goods by fire in such warehouse, regardless of any question of negligence.

We therefore affirm the case as to Peyton and Wyatt, and reverse and remand as to defendant Daniel.

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes