**HINES, Director General of Railroads, v. ROBEY. (No. 8388.)**

(Court of Civil Appeals of Texas. Dallas. Oct. 23, 1920. Rehearing Denied Nov. 27, 1920.)

1. **Carriers ⬳395 — Passenger moving trunk to railroad platform for safety does not show delivery.**

Where a passenger, after arrival at his destination, saw that his trunk had been left in a place where it would be damaged by a rain which was then threatening, and moved the trunk from the place it had been left by the railway employés to the station platform, that fact did not establish a delivery of the trunk to the passenger, and did not relieve the carrier of liability for its subsequent care.

2. **Carriers ⬳408(4)—Evidence held to sustain finding carrier negligent as warehouseman.**

In an action for loss of plaintiff's trunk which he did not call for until 21 hours after his arrival, evidence of the precautions taken by the carrier to protect the baggage at its station during that time *held* not to show as a matter of law that the carrier was guilty of no negligence, and therefore not to entitle it to a directed verdict, though it was liable only as warehouseman.

3. **Railroads ⬳5½, New, vol. 6A Key-No. Series—Director General not affected by invalid provisions of judgment.**

The Director General of Railroads cannot complain of a judgment because it provides for execution against the railroad or the receiver in case the railroad property is returned to them, though they were not parties to the action, since those provisions of the judgment, if unauthorized, are void and do not affect its validity as against the Director General.

Appeal from Hill County Court; R. T. Burns, Judge.

Action by J. Milton Robey against Walker D. Hines, Director General of Railroads. Judgment for the plaintiff, and defendant appeals. Affirmed.

Spell, Boggess, Naman & Penland, of Waco, for appellant.

Vaughan & Alney, of Hillsboro, for appellee.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

TALBOT, J. This is a suit by J. Milton Robey against Walker D. Hines, Director General of Railroads, to recover the value of a trunk and its contents. The plaintiff became a passenger on the railroad of the Houston & Texas Central Railroad at Waco, Tex., to be transported, together with his trunk and its contents, to College Station, Tex. The defendant answered, admitting the undertaking to transport plaintiff and his baggage as alleged by him, but averred that the agreement so to do had been performed; that plaintiff's baggage was safely carried to its destination and then unloaded from the train at the place where it was convenient to remove the same; that in fact plaintiff took possession of his trunk and its contents at College Station and exercised complete control over the same; and that therefore said property was delivered to plaintiff. The plaintiff replied to this defense, alleging that his trunk was not placed in a safe place when unloaded from the defendant's train at College Station, but that said trunk with its contents was placed on the right of way of said railway company near the railroad track and in a ditch which drained the surface water from the right of way; that at the time the trunk was so unloaded from the train it was threatening rain, and to avoid probable injury plaintiff, with the assistance of a friend, moved the trunk from where it had been deposited by the railway company's servants a few feet and placed it on the depot platform of said company; that the trunk and its contents were never received by plaintiff from defendant and was never seen by him after the same was moved to the depot platform to avoid damage to it from rain; that the loss of the trunk with its contents was due to defendant's negligence in failing thereafter to take care of, protect, and guard the same.

The trial court at the conclusion of the evidence refused to direct the jury to return a verdict in favor of the defendant, but submitted the case on special issues, and, the issues submitted having been answered favorably to plaintiff, judgment was rendered for him in the sum of $200.23, with interest and costs of suit.

Motion for a new trial having been overruled, defendant appealed.

[1] The first contention of the appellant is that the court erred in not instructing the jury to return a verdict in his favor, because the uncontroverted evidence shows that the defendant duly transported the baggage in question to its destination and there unloaded it, and that thereafter plaintiff removed the said baggage from the place at which defendant had unloaded it without the knowledge or consent of the defendant, and that the said baggage was therefore in the contemplation of the law delivered to the plaintiff, and the defendant was absolved from all liability with reference thereto. This con-

tention is not sustained. The evidence shows that the appellee's trunk, with its contents, was unloaded from the train at College Station and placed near the track of the railway company some 40 or 50 feet from its depot and at a place where it would likely be damaged in the event of rain, and that appellee simply placed it upon the depot platform, not with the intention of then taking it out of the possession of the appellant, but to do what appellant had failed to do, place it where the threatened injury from rain would be avoided. This did not, either in fact or contemplation of law, constitute a delivery of the trunk by appellant to plaintiff or absolve appellant from liability for its loss through the failure of his servants thereafter to exercise that degree of care imposed by law upon them for its preservation and safe-keeping. The fact that the trunk was removed by the appellee from the place where appellant's servants' had deposited it and by him placed upon the depot platform of the railway company without the knowledge of appellant or his employés is, we think, of no consequence in determining the question. There is no pretense that plaintiff, in putting the trunk upon the platform, placed it in an unsafe place or thereby increased the hazard of its being lost.

[2] The evidence shows, as is in substance contended by the appellant, that appellee's trunk reached College Station about 4:30 o'clock p. m., and that he did not call for it and offer to remove it from appellant's premises until the next day about 1:30 o'clock p. m., and that appellee's failure to sooner call for his trunk was due solely to the fact that he had not secured a room at College Station or other place to which he might move the trunk, and appellant insists, therefore, that, if liable at all, he was only liable as a warehouseman, and, there being no evidence whatever of any negligence on his part in taking care of the trunk after appellee put it on the platform and permitted it to remain on appellant's premises, there was no liability shown, and the jury should have been instructed to return a verdict for appellant. The jury, in response to appropriate questions propounded by the court, found that appellee's trunk had never been delivered to him by appellant, and that the servants of the appellant who had charge of the baggage unloaded at College Station when appellee's trunk arrived there failed to exercise ordinary care to protect and keep it, and that such failure was the cause of the loss of the trunk and its contents.

That appellant's liability as a common carrier had ceased and his liability was only that of a warehouseman when appellee's trunk and its contents were taken or lost, if taken from him or lost, may be doubted, but, if it be conceded that under the facts shown appellant's liability was only that of a warehouseman, still we are not prepared to say

appellee was not entitled to recover. That a failure to exercise ordinary care to safely keep the property committed to his custody must be shown in order to render a warehouseman liable for its loss cannot be questioned. The difficulty we have experienced is in determining from the evidence before us whether or not, in the absence of liability as a common carrier, appellant was liable as a warehouseman. The testimony shows that appellee's trunk was on the railway company's platform at or about 5 o'clock in the afternoon of September 18th, and then in the possession and subject to the control of appellant's servants. Appellee called the next day about 1:30 o'clock p. m. for his trunk, and it could not be found, and he has never seen it since it was placed upon appellant's platform. When or by whom it was taken or what became of it does not appear. Appellee testified, in effect, that when he arrived at College Station he went directly to the college and returned to the station in about one hour; that it was then he took his trunk and put it on the platform of the railway company; that at this time there were a great many trunks at the station; "that he noticed trunks in every direction around the depot and that they were scattered everywhere." He further testified that when he returned to the depot the next day to get his trunk he "didn't see any indication that those trunks had been moved. They were scattered still." He further said that his trunk was on the platform near the south end of the building, and that there were other trunks scattered around on the ground within a few feet of it, but that there were no trunks on the platform except his. Appellant introduced but one witness, and he testified, among other things, that he was present on the day appellee's baggage arrived at College Station; that after the train arrived there were possibly 1,500 trunks and pieces of baggage of different kinds piled and scattered all over the platform; that after the train left he helped move the baggage in the house that night; that he secured after supper the assistance of four section men, and that they moved all the baggage they could into the railway company's waiting rooms, stacked them on top of the seats, and filled one of the International & Great Northern waiting rooms, which was across the International & Great Northern tracks, and stacked other trunks and baggage as high as they could under the shed, because it looked like rain. He further testified, in effect, that when appellee complained that he could not find his trunk, he took appellee with him to point out the place where his trunk had been placed because he could not imagine how they missed the trunk the night before, as they had gone over the place with lanterns. He further said:

"Of course, we never look up in here, because we didn't expect any baggage there.

That is high. * * * The platform is the same level all around, but is higher from the ground at the south end of the depot than at other places. * * * On the side of the depot where the train stops there are lights under the eaves of the house. Those lights remained lighted all night during that time. There were two night watchmen on duty there that night. Their duties were to take care of baggage and express and load the mail. I left the station about 11 o'clock that night."

The soundness of the principles of law enumerated in Railway Co. v. Smith, 81 Tex. 479, 17 S. W. 133, and other cases cited by the appellant, need not be questioned, and we have not set out all the testimony bearing on the question under consideration, but have carefully read all of it. The testimony to sustain the charge of negligence on the part of appellant as a warehouseman is not as satisfactory as might be desired, but can it be safely said that there is no evidence in the record tending to show that appellee's trunk and its contents was lost to him by the negligence of the appellant? The jury found that appellant's servants who were in charge of appellee's baggage failed to exercise ordinary care to protect and keep it, and our conclusion is that we would not be warranted, in view of all the evidence bearing upon the issue, to disturb that finding; in other words, we conclude that it cannot be said, as a matter of law, from the record before us, that a want of ordinary care on appellant's part to preserve appellee's trunk and its contents was not shown. It does not appear that the buildings in which some of the baggage was stored were provided with doors securely locked or fastened, nor does it appear that the same, or that stacked under the shed, was properly guarded. The appellant's witness Dooley testified that there were two night watchmen on duty at the station the night after appellee's baggage arrived there, but he further said that their duties were not only to take care of the baggage, but also the express, and in addition thereto to load the mail. Evidently they could not properly watch the baggage to prevent its being carried away and at the same time "take care of the express and load the mail." Neither of the watchmen testified on the trial of this case, and just what watchfulness they exercised in the performance of their duties does not appear. Manifestly appellee's trunk, together with its contents, was taken from the possession of appellant's servants and removed from his premises between the time appellee placed it upon appellant's depot platform and the time he called for it the next day, and it was not unreasonable for the jury to conclude, as their verdict indicates they did, that during that time appellant's servants failed to exercise ordinary care to keep and protect his property. The assignment presenting the question here under consideration must be overruled.

[3] The trial court, in rendering judgment for appellee, directed that, in the event the Director General of Railroads did not pay the judgment before the properties of the Houston & Texas Central Railroad Company were returned to its control, then execution shall issue on this judgment as provided by law against the Houston & Texas Central Railroad Company, and that, in the event the properties of said railroad company should be returned to a receiver, then such receiver be directed to pay off and discharge said judgment. The appellant complains of this part of the judgment appealed from on the ground that neither the Houston & Texas Central Railroad Company nor any person as receiver was a party to this suit, and the court had no authority or jurisdiction in any event to render judgment directing either of them to pay the judgment recovered against the appellant. For the purposes of the appeal it is sufficient for us to say upon the question here attempted to be raised that, if the appellant, as Director General of Railroads, was not such an agent or representative of the Houston & Texas Central Railroad as to authorize the trial court to direct the payment of the judgment rendered in appellee's favor against appellant upon the contingency mentioned in said judgment, so much of said judgment as gives such direction is without force and effect and not binding on either. the railroad company or any receiver to whom the properties of said company have been or may be returned.

The judgment is affirmed.