### C. H. SILLIMAN ET AL. V. R. M. GANO ET AL.

Decided April 29, 1897.

| 90 | 637 |
|----|-----|
| 90 | 616 |
| 91 | 111 |
| 92 | 50 |

**1. Special Verdict—Failure to Find Facts.**

Plaintiffs sued as owners of lands on which a mortgage was foreclosed, alleging an agreement entitling them to pay off the incumbrance after foreclosure, and a sale by the purchaser in violation of such agreement. The case having been submitted on special issues and verdict, held, that:

(1) The verdict must constitute the basis of the judgment, and the court can not look to the evidence. (P. 645.)

(2) The ownership of the land by plaintiffs was a material issue, and without a finding of that fact by the jury no judgment could be rendered for plaintiffs. (P. 647.)

(3) Arts. 1330, 1331, Rev. Stats. (1879), are but declaratory of the law as previously announced by the courts, but place it beyond the power of the court to modify its previous rulings. (P. 645.)

(4) The rule disapproved by the court, and legislative modification suggested. (P. 646.)

(5) A special answer by defendant, though it failed to deny or expressly admitted the ownership as alleged, would not, when accompanied by a general denial, dispense with a finding of such fact by the jury. (P. 646.)

**2. Damages—Breach of Contract to Allow Redemption of Land.**

In a suit for breach of contract to permit plaintiff, as owner of mortgaged land, to redeem same after foreclosure and sale, held:

(1) If the lands had been sold to innocent purchasers at the time of suit, plaintiffs would have been entitled to the excess in its value over the mortgaged debt, including costs of the foreclosure proceedings. (P. 647.)

(2) If but a small part of the lands had been sold at commencement of the suit, without thereby depreciating the unsold remainder in value, defendants should be charged with the value of the lands sold and the plaintiffs should be entitled to recover the unsold lands, upon paying the remainder of the mortgage and debt charges. (P. 647.)

(3) But when defendant had continued to sell such remaining lands after suit brought, though, buying pendente lite, the purchasers would not be protected as innocent holders, the trustee who had sold it was in no position to demand that plaintiff should proceed against them, and plaintiff could hold him responsible for the value, though entitled, if he so elect, to proceed against the purchasers. (Pp. 647 to 649.)

**3. Misjoinder—Verdict.**

Where parties whose rights were separate and distinct were improperly joined as plaintiffs, though such misjoinder must be pleaded or be waived, yet when, without

such plea, the case is submitted on special issues, there should be separate findings as to such plaintiffs suing in distinct rights. (P. 649.)

·4.  Pleading—Prayer for Relief—Query.

Where plaintiff prays for certain relief absolutely, and for different relief in the alternative only, in case the first is refused, if he shows a case entitling him to that first prayed for can he be awarded the alternative relief?  (P. 649.)

5.  Damages—Value of Land—Subdividing.

When damages are measured by the market value of a larger tract of land, the test is not what it would bring when cut up into small tracts suitable for farms, involving expense thereby.  (P. 650.)

ERROR to Court of Civil Appeals, Fifth District, in an appeal from Ellis County.

*J. B. Davies* and *G. C. Groce*, for plaintiffs in error.—The court erred in rendering any judgment for plaintiffs, and in overruling defendants' motion to enter judgment for them non obstante veredicto, because, from the evidence, it appeared that the agreement found by the jury to have been made between plaintiffs and defendant Silliman, if made, was fraudulent as to plaintiffs' creditors, and especially as to James Guthrie, an attachment creditor, and for whom plaintiffs C. W. and Clara B. Gano, held in trust such title as they had to the lands in controversy claimed by them.  Walker v. Hill, 22 N. J. Eq., 527; Livermore v. Mc-Nair, 34 N. J. Eq., 483; Owen v. Arvis, 2 Dutch. (N. J. Law), 22; Johnson v. Whitewell, 7 Pick. (24 Mass.), 71; Kimball v. Thompson, 4 Cush. (58 Mass.), 411; Freeman on Ex., sec. 308.

An executory agreement intended to deprive a creditor of one of the parties thereto of a legal right is fraudulent as to such creditor.  Such an agreement is contrary to public policy, and will not be enforced at the instance of either party thereto.  The parties are in pari delicto, and the courts leave them where they have placed themselves.  "Ex turpi contractu, actio non oritur."  Ferrell v. Duffy, 5 Texas Civ. App., 435; Danzey v. Smith, 4 Texas, 411; Smith v. Bosquet, 27 Texas, 507; Cameron v. Romilee, 53 Texas, 238; Eastman v. Rountree, 56 Texas, 110; Davis v. Sittig, 65 Texas, 497; Willis Bros. v. Morris, 63 Texas, 458; Dansley v. Freiberg, 76 Texas, 463; Beer v. Landman, 31 S. W. Rep., 805; Randall v. Howard, 2 Black (U. S.), 583; Dent v. Ferguson, 132 U. S., 50; Baldwin v. Campfield, 8 N. J. Eq., 618; Servis v. Nelson, 14 N. J. Eq., 94; Cutler v. Tuttle, 19 N. J. Eq., 562; Walker v. Hills, 21 N. J. Eq., 119, 22 N. J. Eq., 513; Owen v. Arvis, 2 Dutch. (26 N. J. Law), 22; Church v. Muir, 33 N. J. Law, 318; Taylor v. Von Schroeder, 16 S. W. Rep., 675; Ford v. Lewis, 10 B. Mon. (Ky.), 127; Canton v. Dorchester, 62 Mass., 528; Gordon v. Clapp, 113 Mass., 335; Hassam v. Barrett, 115 Mass., 256.

If a contract, as alleged or proved at the trial, be contrary to public policy, even if no objection is raised to its legality, the court, as the guardian of the public welfare, should take judicial notice of it and dismiss the suit.  Keith v. Fountain, 3 Texas Civ. App., 391; Oscanyan v. Arms Co., 103 U. S., 267; Greenhood on Public Policy, 124, rule 141;

Valentine v. Stewart, 15 Cal., 404; Cordaze v. Swift, 113 Mass., 250; Dunham v. Pressley, 120 Mass., 289; Wright v. Rindskopf, 43 Wis., 343; Schenk v. Hart, 32 N. J. Eq., 774.

That the second lien holders on the lands in controversy have been settled with since the agreement relied upon by plaintiffs below was made, if made at all, is immaterial. The validity of any agreement depends on the state of facts existing when it is made, and upon what might be done under it, and subsequent acts of parties cannot give validity to an agreement which when made was fraudulent and contrary to public policy. Elser v. Graber, 69 Texas, 22; Ferrell v. Duffy, 5 Texas Civ. App., 435; Owen v. Arvis, 2 Dutch. (N. J. Law), 22; Dent v. Ferguson, 132 U. S., 50; Hassam v. Barrett, 115 Mass., 256.

While a court should of its own motion dismiss a case shown by the plaintiff's testimony to be based on an agreement contrary to public policy, yet if the case is submitted to a jury on special issues, every issue arising from the pleadings and proof should be submitted. Newbolt v. Lancaster, 83 Texas, 271.

A general denial of an agreement alleged raises the issue of validity and requires the plaintiffs to prove a legal, enforceable agreement. Whatever shows the invalidity of the agreement charged, especially if appearing from plaintiff's testimony, shows in fact that no such agreement as alleged ever existed. Oscanyan v. Arms Co., 103 U. S., 266, and other cases cited under other propositions, wherein the invalidity of agreements charged, as in this case, is considered without special plea.

The court erred in failing to submit as an issue to the jury whether or not plaintiffs were the owners of the lands in controversy as charged by them, and in assuming that they were such owners, and also erred in refusing to arrest judgment because there was no finding of such ownership. Where a case is submitted to a jury on special issues it is not only necessary that every issue should be submitted, but the court cannot assume the existence of any fact in issue, nor look beyond the findings of the jury, even to facts otherwise apparent in the record, as the basis of its judgment. Newbolt v. Lancaster, 83 Texas, 271; Ledyard v. Brown, 27 Texas, 406; Smith v. Warren, 60 Texas, 462; Kuhlman v. Medlinka, 29 Texas, 385.

The court erred in submitting the case to the jury as one wherein joint plaintiffs were asserting joint rights to the lands in controversy, whereas R. M. Gano asserted individual rights in a specific body of land, and C. W. and Clara B. Gano asserted rights in themselves to another distinct body; and also erred in overruling defendant's motion in arrest of judgment and for a new trial, on this account, and because it was impossible to render judgment on the findings of the jury in accordance with the rights of the parties as alleged by them; and also erred in rendering a joint judgment against these defendants, as was done, and in overruling defendant's motion to set aside the judgment actually rendered.

Plaintiffs below, upon proof of the facts alleged by them, were entitled to judgment, if at all, at most, R. M. Gano for the difference between

what the lands sold from the tract claimed by him brought in excess of the defendant's lien charges against it, and for the recovery of such portions of said tract as remained unsold, and C. W. and Clara B. Gano to judgment in respect to the second tract on the same basis. There is no such thing as conversion of real estate. That doctrine applies alone to personal property. A judgment not in accordance with proper prayers of a petition is erroneous. Willis Bros. v. Morris, 66 Texas, 632; Cook v. Pollard, 70 Texas, 723.

The court erred in not confining the proof and issues in respect to the value of the lands in controversy to the cash value of such lands as had been sold by Silliman, in the condition of such lands when sold, and in submitting to the jury as issues, the reasonable cash value of said lands on November 7, 1893: (1) If sold in bodies of 2000 and 3000 acres, and (2) if cut up in lots or tracts of the usual size for farms, and offered for sale, for cash, in that manner. When value is point at issue, it means what the property in question, in its then condition, would bring in the market if sold for cash, to one who wished to buy, at a sale made in such manner as a prudent person would sell with a view to realizing the fair value of the property. Proof of what property would bring if sold in a particular manner is not a correct criterion of value and is improper. Schoolher v. Hutchins, 66 Texas, 331.

The court erred in rendering any judgment against defendant C. H. Silliman, because the agreement charged by plaintiffs, if made by him, was in violation of his duty to his principal the Land Mortgage Bank of Texas, and affected its rights with a prejudicial secret trust, and constituted him the agent of parties adverse in interest to his said principal, and was for his individual benefit to the extent of the attorney's fees to be recovered in the event of the litigation, wherefore said agreement was contrary to public policy, and rights growing out of it will not be enforced. Any agreement which involves, requires or is calculated to induce, a dereliction of the public or private duty of men, is contrary to public policy, and will not be enforced. Greenhood, Public Policy, 306, 266; Meecham on Agency, secs. 66, 67, 643.

*M. B. Templeton* and *Gano, Gano & Gano,* for defendants in error.— The equitable doctrine that a court will not enforce or set aside a transaction between parties upon the ground that it is contrary to public policy, is limited to cases where there is moral turpitude. Such contracts are divided into two classes: first, contracts that are illegal, i. e., in violation of some criminal law; second, contracts that are fraudulent, i. e., in violation of private rights. The refusal of the court to interfere in such a transaction is based exclusively upon the idea that the party should be punished, and has no application whatever to a transaction where a party with honest intentions violates the technical rights of individuals. (Actual fraud only was asked to be submitted in the charge presented to the court.) Thomas v. City of Richmond, 12 Wall., 349; Frist v. Child, 21 Wall., 452; Powell v. Inman, 82 Am. Dec., 427; Holman v.

Johnson, 1 Cowp., 343; Wait on Fraud. Conv., secs. 429, 435, 436, 437; Pomeroy's Eq. Juris., secs. 402, 916-970.

The statute against Fraudulent Conveyances (Rev. Stats., art. 2465), cannot be invoked in this cause. This statute makes certain transactions voidable as to creditors and creditors alone can assert any right by way of suit or defense under or by virtue of said statute. Miller v. Koetze, 70 Texas, 162; Epperson v. Young, 8 Texas, 135; Brooks v. Martin, 9 Wall., 72; Zuver v. Clark, 104 Pa. St., 222; Conly v. Tindale, 32 Texas, 55; Powell v. Inman, 82 Am. Dec., 426; Davis v. Swanson, 25 Am. Rep., 678; Weaver v. Pierce, 24 Pick., 146; Dyer v. Homer, 22 Pick., 258; Hoover v. Pierce, 26 Miss., 627; Brown v. Thayer, 12 Gray, 1.

A void transaction is one upon which no right whatever can be predicated. It has no existence either in law or equity—such for instance as contracts in violation of penal laws. The illegality of such an action need not be pleaded where the illegality appears upon its face, because the court takes notice in such case of its nature and having no existence it fails of itself. A voidable act on the other hand is one which is valid unless impeached or set aside at the election of some person entitled so to do. It is invalid only as to some persons, and not as to them until an election is exercised. In the latter case, i. e., where the transaction is voidable—as for instance in cases of fraud where private rights are injured—the fraud is not an issue in the case unless presented by plea. A conveyance to defraud creditors is under our laws only voidable, and to avail a defendant the fraud must be set up in his answer. Illegality, where it depends upon extraneous facts, must also be presented by special plea. Heffron v. Pollard, 73 Texas, 103; McClure v. Sheeks' Heirs, 68 Texas, 432; Tillman v. Heller, 78 Texas, 601; Blair v. Finley, 75 Texas, 211; Baynes v. Bensing, 75 Texas, 201; Lewy v. Fischl, 65 Texas, 319; Hoffman v. Cleburne Bldg. & Loan Ass'n, 2 Texas Civ. App., 691; Nunn v. Lackey, 1 White & W. Civ. Cas., sec. 1331; Markel v. Scott, 2 White & W. Civ. Cas., sec. 674; Turner v. Gibbons, 2 White & W. Civ. Cas., sec. 714; Sayles' Pleading, sec. 119; Wait's Act. and Def., 70; Abbott's Trial Ev., 789; Wait on Fraud. Conv., secs. 408, 415, 416, 420, 425, 426 and 445.

The presumption obtains that the parties did not intend to violate the law, and where the contract is liable to two constructions, one making it valid and the other void, the first will be adopted. The law never presumes that a party has been guilty of a fraud, or that an act valid upon its face was done from a fraudulent purpose, but this must always be alleged and proven. Wait on Fraud. Conv., sec. 433; Willis v. Whitsitt, 67 Texas, 673; Tillman v. Heller, 78 Texas, 601; Pomeroy's Eq. Juris., secs. 971, 972; Giddings v. Steele, 28 Texas, 757; March v. Whitmore, 21 Wall., 178; Lorillard v. Clyde, 86 N. Y., 387.

The findings of the jury are sufficient to sustain the judgment without resort to the alleged agreement to permit the redemption of the lands, because the finding that the sheriff's sale was fraudulent, for reasons outside of the alleged promise, authorizes either the setting aside of the

sale or the declaration of a trust at the election of the injured party. This can be done without aid of the promise and the judgment will not therefore be disturbed. Douglas v. Baker, 79 Texas, 508; Sears v. Sears, 45 Texas, 560.

The court may always, in cases of general verdicts as well as verdicts upon special issues, assume as true any fact uncontradicted by the evidence; and it is error for the court to submit any question to a jury if a finding other than one way thereon would not be sustained by the court. In cases of verdicts upon special issues, it is only essential that the verdict contain sufficient data upon which to base a judgment, and if the finding does this in substance it is sufficient. Where this is the case, if the submission of any other issue made by the pleadings is desired, it must be asked. McClure v. Sheeks' Heirs, 68 Texas, 433; McKinney v. Nunn, 17 S. W. Rep., 518; Railway v. Easton, 2 Texas Civ. App., 381.

Where a question is not made an issue in the case by the pleadings, or where being made an issue it is immaterial in either event, such question need not be submitted. Cole v. Crawford, 69 Texas, 126.

Where an agreement is made for the benefit of several parties, or where a certain transaction is fraudulent as to several parties, all the parties entitled to the benefit of the agreement may join in a suit to enforce it or to have the transaction set aside or the proceeds held in trust, as the case may be, for themselves; and therefore the parties plaintiff in the present suit had the right to institute it in the manner in which it was done.

If the plaintiffs, on the other hand, had no right to assert joint rights and ask joint remedies in their pleadings, it was done in this case, and the only way for the defendants to have reached the objection would have been by an exception for the misjoinder of parties. This was not done and the objection, if it were valid (which is denied), comes too late.

It is the duty of the court to make his charge and submit issues that are applicable to the evidence in the case. In this case the court submitted to the jury upon the question of the value of the lands, their reasonable cash value at the time of the sale, November 7, 1893, if sold in the condition presented by the two phases of the evidence, to-wit: the condition in which it was actually sold and the condition in which plaintiffs claimed it should have been sold. The first was in exact accordance with the demand made by the assignment of error and the second in accordance with the condition in which the plaintiffs claimed it should have been sold.

It being shown by the evidence that the lands involved in this suit were farming lands and valuable chiefly for that purpose, the court had the right to submit upon the second phase of this question, as referred to above—the question of the value of such lands if sold in tracts of such size as was usual for farming purposes, and if it had not had this right the issue was not essential to the judgment and did not constitute the basis therefor and the objection is, therefore, as to the judgment rendered, immaterial.

GAINES, CHIEF JUSTICE.—This action was brought by R. M. Gano, Clara B. Gano, as surviving wife of John T. Gano, deceased, administering the community estate of herself and her deceased husband as survivor under the statute, and C. W. Gano, against C. H. Silliman, The Land Mortgage Bank of Texas, and H. L. Payne.

The case made by the amended petition and trial amendment is thus stated in the application for the writ of error, and is in the main sufficiently full for the purposes of this opinion:

"That on and prior to September 13, 1893, R. M. Gano was the owner and in possession of a tract of land of 3000 acres, situated in Ellis County, and at the same time C. W. and Clara B. Gano, (the latter as community executrix of J. T. Gano, deceased,) were the owners of and in possession of a second tract of land of 2020 acres, in said county, both tracts being described and each consisting of divers smaller tracts, and that said parties held said lands subject to the liens of certain mortgage debts by H. L. Payne to the plaintiff in error, The Land Mortgage Bank of Texas, Limited, foreclosed by judgment of the District Court of Travis County on September 13, 1893, for $49,008 against said H. L. Payne with a foreclosure of lien for $30,661 on the first mentioned tract of land and for $18,347 on the second mentioned tract of land.

"That said defendants in error held said lands subject to the encumbrances aforesaid and that the foreclosure aforesaid was instituted and prosecuted under an agreement that the plaintiff in error, Silliman, who was the agent of his co-plaintiff, the holder of said mortgage debts, should foreclose said liens and buy in said property and then permit the defendants in error within a reasonable time to pay off said encumbrances by new loan or otherwise and re-acquire title to the lands. That this agreement was for the purpose of saving and preserving to themselves and certain creditors, second lienholders on said lands (alleged subsequently to have been paid off), the equities in said lands. That under such agreement, foreclosure was had, and the lands sold at sheriff's sale on November 7, 1893, and bid in by Silliman at an inadequate price, said sales being of each tract and not in subdivisions, and that after such purchase plaintiff in error, Silliman, repudiated the alleged agreement and, acting for himself and his co-plaintiff in error, sold and disposed of about 4300 acres of said land for the gross sum of $74,000, and still had in his possession about 670 acres thereof, and that the lands were worth $50,000 more than the amount of the lien encumbrances thereon, and judgment was prayed that said Silliman be held as a trustee for the defendants in error, by reason of his purchase as aforesaid, and that he and his co-plaintiff in error be charged with all sales made by him of said lands and for judgment against them for the balance of the excess of sales over the lien debts, and that defendants in error be divested of all title to the lands remaining unsold, as to which discovery was asked, and title thereto be vested in defendants in error, and for judgment for rents and for a writ of possession, and in the alternative for the difference in value of the entire lands over the mortgage debts, and should this be refused, that the

sheriff's sale be set aside and the deeds to Silliman cancelled, and for general relief.

"In the trial amendment . * * it was averred in substance that the consideration of the agreement aforesaid was that 'the defendants in error waived the promises of Silliman not then to foreclose and the right which they claimed to then prevent foreclosure because of the existence of the levy of a writ of attachment on said lands, issued out of the Federal Court at Dallas at the suit of one James Guthrie, a creditor of the defendants in error."

Payne appears to have had no interest in the suit and did not answer. The original petition was filed November 22, 1893, but does not appear in the transcript. The defendant Silliman answered this and denied generally all the allegations of the petition, except as admitted in his special answer. The special answers denied specifically the agreement upon which the contract was based and alleged many facts which were in the main mere matters of evidence. His answers were adopted by his co-defendant, the Land Mortgage Bank. After the coming in of the plaintiffs' amended petition, Silliman filed another answer expressly in reply thereto, but which he denominated a supplemental answer, in which he denied all the allegations of the amended petition, without qualification, and specially answered, setting forth many allegations not necessary to be stated. This answer was also adopted by his co-defendant, the Land Mortgage Bank.

Upon the trial the case was submitted to the jury upon special issues; but no issue was propounded as to the ownership of the respective tracts of land by R. M. Gano and C. W. and Clara B. Gano, as alleged in the petition, and consequently there was no finding as to those facts. The right asserted in the petition was a right to redeem the lands in the hands of Silliman, claimed to have accrued by reason of an agreement to that effect made by Silliman with the plaintiffs as owners of the land, subject, to the mortgage in favor of his co-defendant. The plaintiffs prayed in the alternative for a recovery of the value of the lands in excess of the mortgage debt, and such was their recovery. It is obvious we think that the determination of the issue of their title to the lands in their favor was. essential to support such a judgment. There was no evidence tending to show that they did not have title and it may be, that the facts with reference to the mortgage may have been sufficient to warrant a finding that they were the owners as alleged. But the fact remains that the issue was neither submitted nor found by the jury, and it is urged that this is fatal to the judgment.

Section 108 of the Act of May 11, 1846, "to organize the District Courts and to define their powers and jurisdiction" reads as follows: "In civil suits the jury may find and return a special verdict in writing, in issues made up under the direction of the court, declaring the facts proved to them; any verdict so found shall be conclusive between the parties as to the facts found." (Pas. Dig., art. 1469.) In Claiborne v. Tanner, 18 Texas, 68, in which a special verdict was returned, and which was decided

while this act was in force, the court reversed the judgment because all the facts were not found, and in their opinion say: "There can be no clearer principle than that, where a jury has intervened and all the issues have been submitted to their decision, their verdict must constitute the basis of the judgment. The court cannot look to the evidence on which the verdict was found in order to determine what judgment to render, but must look alone to the verdict. For it is upon that which the jury have found—not what they might, or ought to have found—that the court proceeds to render judgment. The judgment is the conclusion of law upon the facts of the case, as found by the verdict of the jury." In Paschal v. Acklin, 27 Texas, 163, there was a verdict upon special issues submitted by the court, and the judgment was reversed upon the ground, that there was no finding that Mrs. Acklin, one of the plaintiffs, was the heir of her deceased children, though the fact was indisputably proved and in part admitted. See also Paschal v. Cushman, 26 Texas, 74; Ledyard v. Brown, 27 Texas, 393; Jackson v. State, 21 Texas, 668; Mussina v. Shepherd, 44 Texas, 623. We have found no case in this court which announces a contrary rule; and the cases cited, to which others to the same effect might be added, seem to settle the law so far as the decisions of a court may do so. But in the Revised Statutes of 1879 the language of the statutory provision with reference to verdicts upon special issues was so changed as to read as follows:

"Art. 1330. A special verdict is one wherein the jury find the facts only on issues made up and submitted to them under the direction of the court.

"Art. 1331. The special verdict must find the facts established by the evidence, and not the evidence by which they are established, and the findings must be such as that nothing remains for the court but to draw from such facts the conclusions of law."

These articles are but declaratory of the law as it had been announced by the court, and in our opinion the change of language could have been intended but for one purpose—which was to make the rule statutory, and so, to fix it, and place it beyond the power of the court to alter it by a modification of its previous rulings.

Since the adoption of the Revised Statutes, the rule has been rigidly followed. It has been recognized in the utterances of this court in many cases. (Moore v. Moore, 67 Texas, 293; Cole v. Crawford, 69 Texas, 124; Heflin v. Burns, 70 Texas, 347); and was notably applied in Newbolt v. Lancaster, 83 Texas, 271. In that case the plaintiff claimed the land in controversy by virtue of a judgment, and sheriff's sale thereunder as the property of the defendant in execution. The defendant in the case was grantee of the execution debtor and pleaded a general denial. In a special answer she admitted the rendition of the judgment, the execution, and the sale by the sheriff, but alleged that the judgment had been satisfied before the sale. The case was submitted to the jury upon special issues, but because there was no issue submitted as to the rendition of the judgment and an execution by virtue thereof, and consequently no finding

of these facts, the case was reversed. It does not appear from the re-
port of the case that the judgment and execution were offered in evidence,.
but we find by reference to the statement of facts contained in the tran-
script, that such was the fact. It follows, we think, that if any rule can
be established by statute and judicial precedent, this rule is firmly estab-
lished in our judicial procedure.

We take occasion to say, that we do not approve the rule. Logically
it is correct; the facts admitted by the pleadings and the additional facts
found by the jury upon the disputed issues, are a proper foundation for
the judgment, and if the administration of justice was to be assimilated to
a game of forfeits, there might be no objection to the requirement. But
the rules of procedure in the courts should be so framed as to secure sub-
stantial justice, and any oversight of the court or of counsel, which, with-
in certain limitations, is not calculated to operate to the prejudice of the·
parties and has not so operated, should be disregarded. In the case last
cited, if the jury had been directed to return a general verdict, it would
have been proper for the court, if not its duty, to instruct them not only
that the evidence showed that there was a judgment and execution, but
also as to their legal effect; and it would seem that if the special issue as·
to the existence of the judgment and execution had been submitted, it
would have been proper for the court to have told the jury what their·
finding upon the issue should be. The rule, in our opinion, is therefore·
technical, arbitrary and unreasonable; and calculated rather to obstruct,
than to promote the administration of justice. Under our system of pro-·
cedure in many if not in most cases, numerous issues arise, and in such
the facts can be best determined by a jury upon a submission of special
issues; but our reports show that under the existing rule it is a dangerous.
practice. The fact about which there is no controversy is apt to be omit-
ted in the submission, and a verdict, otherwise correct, must be set aside..
Probably the Legislature could pass no measure better calculated to·pro-
mote a prompt and proper disposition of causes than to provide that,
when a case is submitted upon special issues, the submission of all issues·
not requested by a party to the suit shall upon appeal be deemed to have·
been waived, and such issue shall be presumed to have been determined.
in such manner as to support the judgment of the court.

It is a matter of no moment that the answer to the amended petition is
not properly named. It is the answer to the pleading upon which the·
case was tried. It consisted, as we have seen, of a general denial and a
special answer. The latter does not contain a distinct averment of the·
ownership of the property as alleged in the petition. If it had it would
not have mended the matter, for in Newbolt v. Lancaster, above cited, the·
amended answer averred the existence of the judgment and execution
through which the plaintiff claimed title, and the judgment was reversed
because these facts were not embraced in the findings of the jury. That
under our statute the general denial puts in issue all the issuable facts al-
leged in the petition, notwithstanding some of them may be admitted in a
special answer, is settled by a long line of decisions of this court. Fowler·

v. Davenport, 21 Texas, 627; Duncan v. Magette, 25 Texas, 245; Express Printing Co. v. Copeland, 64 Texas, 354; Young v. Kuhn, 71 Texas, 645. In Fowler v. Davenport, above cited, the question is fully and ably discussed, and our statutes bearing upon the question construed.

The court having failed to submit the question of the plaintiffs' ownership of the lands in which they respectively claimed the equity of redemption, and there being no finding upon that issue, the judgment must be reversed. This renders it unnecessary for us to determine many of the questions presented by the assignments of error in this court. It is proper to consider some of the points, with a view to another trial of the case.

Perhaps the most important question of law in the case is as to the measure of the plaintiffs' recovery, provided they should be found upon a new trial entitled to any relief. If the defendant Silliman had sold all the lands to innocent purchasers at the time of the suit, the remedy of the plaintiffs would have been simple. They would have been entitled to the excess in the value of the land over the mortgage debt, including in the latter the costs of the foreclosure proceedings. (Boothe v. Fiest, 80 Texas, 141.) But only a small part of the lands had been sold when the suit was brought, and unless the sale of the part which was sold had depreciated the value of that which remained unsold, we are of opinion that, if nothing more had been done in disposing of the property by Silliman before the amended petition was filed, the defendants should have been charged with the value of the lands sold, and the plaintiffs should have been entitled to recover the unsold lands, upon paying the remainder of the mortgage debt and charges. But Silliman, after the institution of the suit, continued to sell, and when the amended petition was filed had disposed of all the lands except about 900 acres and at prices more than sufficient to discharge the mortgage debt. Clearly the plaintiffs, if they could establish the relation of trustees and cestuis que trustent between the defendants and themselves, were entitled, as against any save innocent purchasers, to claim at their election either the equity of redemption in the lands so sold, or the proceeds of the sales less the charges which had been fixed upon them by defendants' incumbrances and the costs which had accrued by reason of the foreclosure. Oliver v. Piatt, 3 How. U. S., 401. But those who bought after the suit was brought were purchasers pendente lite and stood in the shoes of their grantor. They could not resist a recovery of the lands. On the other hand, for the reason that the property may have been sold for less than its value, the beneficiary cannot be compelled to take the proceeds of a sale made in violation of the trust. When the trust property is sold to an innocent purchaser the trustee may be made to account for its value, because there is no other recourse. But where the sale is to a purchaser, who is not protected by reason of a superior equity to the cestui que trust, can the latter elect to let it stand, and proceed against the trustee for the value of the property sold? We have found no case in which this precise question has been decided. But we are of opinion that when the trustee has treated the property as his own and has sold it and thereby passed the legal title, he is in

no position to demand that his cestui que trust shall proceed against the purchasers; and that by the breach of trust he becomes, in any event, personally liable to make compensation to the beneficiary for his property. It is equitable that the cestui que trust should recover of a purchaser with notice if he elects to do so; but it is inequitable, at least as between the trustee and purchaser, that he should be required to proceed against the latter and let the former go free.    In the case of Oliver v. Piatt, cited above, the trustees sought to evade the consequences of a sale of lands made by them in violation of the trust, by re-purchasing the identical property sold by them, and tendering it back to the beneficiaries.    But the court held that the latter's right of election was fixed by the breach of trust, and that they were entitled to claim the proceeds of the sale. In 2 Pomeroy's Equity, section 1058, it is said:    "If the trust property has been transferred to a bona fide purchaser for value without notice, or has lost its identity, the beneficial owner must, and under other circumstances he may resort to the personal liability of the wrong-doing trustee,"—citing Lathrop v. Bampton, 31 Cal., 17.    And again, in sec. 1080 in the same volume, the author says:    "In· addition to this claim of the beneficiary upon the trust estate as long as it exists, the trustee incurs a personal liability for a breach of trust by way of compensation or indemnification, which the beneficiary may enforce at·his election, and which becomes his only remedy whenever the trust property has been lost or put beyond his reach by the trustee's wrongful act."    Since· we have found no case directly in point, we think it unnecessary to cite those which merely establish the general principles applicable to the subject.    We are of opinion therefore that when the trustee betrays his trust by a sale of the property, the beneficiary can hold him responsible for its value, although he may, if he so elect, be enabled to proceed against the purchaser for the property sold.

But it does not follow, that because a trustee who has sold the trust estate will be compelled to account for its value, one who has sold only a part may be made to pay for the whole.    The law in the latter case will give the beneficiary such remedy if practicable as will fully compensate him for his injury, but will not permit him to elect a remedy which goes beyond a full reparation merely for the reason, that his trustee has betrayed his confidence.    The trust property unsold remains his property, and the simple fact that another part has been sold gives him no right to treat the whole as converted merely because he may prefer to have the value of the thing to the thing itself.    Circumstances may be such as that the value of that which is retained is dependent upon that which is sold, and in such a case, upon allegation and proof of the fact that the unsold property is worth less by itself than as a part of the whole, he would be entitled to recover for the depreciation of the part not sold, which had resulted from the sale of the other part.    There is neither any allegation by the plaintiffs in their pleadings nor any finding by the jury to authorize such a recovery in this case.    On the contrary, the verdict indicates that the land will bring a better price in small parcels, than when sold

as a whole.    In this case the District Court decreed a recovery of the unsold land.    So much of the judgment was reversed by the Court of Civil Appeals and in lieu thereof judgment was given for its value as found by the jury.    We think the latter court was in error in so ruling.

The plaintiffs in error do not complain of a misjoiner of actions in this court.    It is settled that the defense must be first urged in the trial court.    Being of a dilatory character, the right to urge it upon another trial may be lost, admitting that it could have been successfuly interposed in the first instance.    But it is here insisted in effect, that if the action of R. M. Gano was properly joined with that of C. W. and Clara B. Gano, their respective rights and remedies were separate and distinct; that there should have been separate findings as to the case of R. M. Gano and also distinct findings as to that of C. W. and Clara B. Gano, and one recovery for R. M. Gano and another for his co-plaintiffs jointly.    We think this contention must be maintained.  But since the judgment is to be set aside upon another ground, it is not necessary to determine whether or not it was error without injury, as urged by the defendants in error.

It is assigned in this court, that the judgment rendered by the Court of Civil Appeals is not in accordance with the prayer of the petition.    There was no assignment upon that point in the Court of Civil Appeals.    But since that court has reversed in part the judgment of the District Court and rendered a judgment not in accordance with the first prayer of the petition, the assignment is probably sufficient to raise the question whether or not it was proper to give any relief save that requested in that prayer.    In Denison v. League, 16 Texas, 399, the proposition is laid down that "where there is no objection to the particular relief prayed for, the plaintiff cannot abandon that and ask a different decree under a general prayer."    The grounds for that conclusion are well stated in the opinion in that case.    Does not the rule apply in this case?    The plaintiffs' prayer was, in substance, that the defendants be declared trustees of plaintiffs for the unsold lands and that they be charged with the proceeds of all sales made by defendant Silliman, and that the plaintiffs have a judgment for the excess of proceeds of such sales over the mortgage debt; "and that in the event this be refused for $50,000, the difference in value of said land and the mortgage debt  *  *;  but should this relief be refused, they asked that the sheriff's sale be set aside and that the deed to said Silliman be cancelled, etc."    They concluded with a prayer for general relief.    The first prayer was asked absolutely and the second and third only upon condition that the first could not be granted.    There is no clearer proposition in the case, than that if the plaintiffs were entitled to relief at all they were entitled to that requested in their first prayer.    Having asked this relief and no other, save upon condition that this could not be granted, were they not restricted to a recovery of the excess of the proceeds of the sale over the mortgage debt and a recovery of the lands which remained unsold?    We ask the question, but since all difficulty may be obviated by an amendment of the petition before another trial, we do not answer it.

We are also of the opinion, that it was not proper to submit to the jury a finding as to what the lands would have brought when cut up in small tracts suitable for farms. The sale in small parcels necessarily involves expense, and the price per acre when so subdivided is not the test of their value. The rule that the value of a stock of merchandise is what it will sell for for cash as a whole or in job lots and not by retail; and it would seem that by analogy the rule should apply to large bodies of land.

We are not prepared to say, that there was such evidence of a fraudulent intent in the alleged agreement between the plaintiffs and Silliman, as would authorize the court to treat it as void without that issue having been distinctly made by the pleadings.

For the reasons given, the judgment of the Court of Civil Appeals and that of the District Court are reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered March 8, 1897.

### ON MOTION FOR REHEARING.

All the points presented in this motion for a rehearing, including that urged with reference to the admission in defendant's original answer, we thoroughly considered before we determined to reverse the judgment. That admission, as we then thought and as we now think, did not have the effect of limiting the scope of the general denial of the allegations of the plaintiff's amended original petition upon which the case was tried, contained in defendant's falsely denominated "Supplemental Answer." The point was an incidental one and though fully considered was not noticed in the opinion. It is one that is not likely to arise again in this or any other case, and it was thought it would serve no useful purpose to discuss it. We are still of that opinion.

But we infer from the motion, that a false construction has been placed upon the following remarks made in our opinion disposing of the case: "We are not prepared to say that there was such evidence of a fraudulent intent in the alleged agreement between plaintiffs and Silliman as would authorize the court to treat it as void without that issue having been distinctly made by the pleadings." The question of fraudulent intent was made in the brief of counsel for the plaintiffs in error, and our sole purpose in the remark was to show that, as we thought, that question was raised neither by the pleading nor by the evidence. Nothing was further from our thoughts than a purpose to reflect upon the motives or conduct of the parties to the transaction; and since such reflection would be improper in an opinion accompanying the remand of the cause for a new trial, we take occasion to remove the misconception by disclaiming any such purpose in the remark above quoted.

The motion for a rehearing is overruled.

*Overruled.*