LEWIS et al. v. BLOUNT et al.

(Court of Civil Appeals of Texas. Galveston. May 27, 1911.)

1. INSANE PERSONS (§ 61*)—CONVEYANCES—VALIDITY.

A conveyance by an insane person is voidable, but not absolutely void, though it can be attacked by the grantor or his legal representative and the property recovered from an innocent purchaser for value without notice.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 93–99; Dec. Dig. § 61.*]

2. TRUSTS (§ 95*)—CONSTRUCTIVE TRUSTS.

Where defendants, posing as the friends of one mentally incapable, fraudulently procured a conveyance of the incompetent's land for an insufficient consideration, and they knew of the incompetent's incapacity, they are constructive trustees, and, if they dispose of the land, the representatives of the incompetent may hold them liable in damages, instead of pursuing the land.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 145–147; Dec. Dig. § 95.*]

Appeal from District Court, Nacogdoches County; James I. Perkins, Judge.

Action by Frank Lewis and others against E. A. Blount and others. From a judgment sustaining a demurrer to the petition, plaintiffs appeal. Reversed and remanded.

D. M. Short & Sons, for appellants. Ingraham, Middlebrook & Hodges, June C. Harris, Geo. S. King, and S. W. Blount, for appellees.

REESE, J. This is an action by Frank Lewis and others, heirs and legal representatives of Henry Lewis, deceased, against E. A. Blount, Ben T. Wilson, and Robert Lindsey, to recover damages growing out of the deceit and fraud on the part of defendants whereby the said Henry Lewis had been induced to convey valuable lands for a sum largely less than their value. S. C. Diggle, to whom said defendants are alleged to have sold the land, and S. B. Kibler, to whom Diggle had in turn sold it, were also made parties defendant. Plaintiff prayed for judgment against defendants Wilson, Lindsey, Blount, and Diggle for their damages, and against defendant Kibler for the land. Defendants Diggle and Kibler were nonresidents, and, not having been served and not appearing, plaintiffs dismissed as to them. To the petition defendants Blount, Wilson, and Lindsey interposed a general demurrer and also a special exception, as follows: "Further specially excepting, these defendants say that said petition shows on its face that if these plaintiffs have any rights against these defendants, or their codefendants herein, it is to recover the title and possession of the land described in plaintiffs' petition, and not for the recovery of damages against these defendants, as it is nowhere alleged in said petition that the last alleged purchaser of said land has placed valuable improvements thereon, or cannot be made whole and indemnified against loss by reason of the warranties under which he purchased, and said suit should be brought in Hartley county, where such land is situated, and this court has no jurisdiction as a matter of law to try the real issue in said case, the title to said land; and of this they pray the judgment of the court." The general demurrer and special exception were sustained, and, the plaintiff declining to amend, the suit was dismissed, from which judgment plaintiffs prosecute this appeal.

The petition alleges, in substance, that plaintiffs are sole heirs at law and legal representatives of Henry Lewis, who died intestate on September 23, 1907; that on June 22, 1906, the said Henry Lewis was the owner in fee simple of an undivided interest of 2,220 acres in 2,726 acres of land in Hartley county, Tex., which is alleged to have been at that date of the value of $25,000. The petition then alleges as follows:

"That on the said 22d day of June, 1906, and on the 8th day of June, 1906, and for many weeks immediately previous thereto, and from the date last mentioned up to the time of his death, the said Henry Lewis was greatly enfeebled both in body and mind by reason of disease, old age, and accidents incident to a long life, and by reason thereof was easily susceptible to the influence, devices, arts, and persuasions of others, and was then and there afflicted with mental infirmity as rendered him unable to guard against imposition, and incapable to make a contract such as is hereinafter mentioned. That immediately previous to the 8th day of June, 1906, the defendant E. A. Blount had been personally acquainted with the said J. H. Lewis and Unity F. Lewis, the aforesaid father and mother, respectively, of the deceased, Henry Lewis, during their lifetime and up to the time of their respective deaths, and had been personally and intimately acquainted and associated with the said Henry Lewis for more than 40 years, all the while knowing his brothers and sisters and the estate left to their children by the said J. H. Lewis and wife, Unity F. Lewis, and especially with the tract of land above described and with its value, location, its ownership, and with the country in which it is situated, during all of the time immediately preceding the 8th day of June, 1906, for more than 30 years, and especially with the fact that said tract of land had gradually advanced in value from the time it was located by virtue of said certificate of said J. H. Lewis, at which time it was worth less than $1 per acre, until the middle of June, 1906, when it was worth more than $7 per acre. That said tract of land is located in Hartley county, Tex., and during all the time the said Henry Lewis lived in San Augustine county, Tex., a distance of more than 700 miles from the location of said land. That

for several years prior to the aforesaid death of Henry Lewis, deceased, which occurred at his home in San Augustine county, at the advanced age of 78 years, old age, ill health, and mental imbecility had deprived him of the capacity to manage his affairs with prudence or to go from place to place such as was demanded by the necessities of his business, a fact which was well known to the defendant E. A. Blount, on the 8th day of June, 1906, and immediately preceding said 8th day of June, 1906, as well as to the defendant Robert Lindsey. That on and immediately preceding the said 8th day of June, 1906, and for several years previous thereto, the defendant Robert Lindsey was and had been intimately known to and associated with the said Henry Lewis and had ingratiated himself into the confidence and good will of the said Henry Lewis to such an extent that the said Robert Lindsey had great influence over the said Henry Lewis, and the said Henry Lewis by reason thereof relied upon the judgment and the honor and integrity of the said Robert Lindsey, which the said Henry Lewis supposed the said Robert Lindsey to possess, and was easily susceptible to the influence and persuasion of the said Robert Lindsey, all of which was well known to the defendant Robert Lindsey, as well as to the defendant E. A. Blount.

"That the defendant Ben T. Wilson on the date last mentioned resided in the county and town of Nacogdoches, some 40 miles from the town of San Augustine where the said Henry Lewis resided, and was then and there utterly unknown to the said Henry Lewis in person or by reputation, and the said Ben T. Wilson being then and there an obscure young man, without pecuniary ability to purchase the tract of land above mentioned, which fact was also well known to all of the defendants, except S. C. Diggle and S. B. Kibler, both of whom were unknown to the said Henry Lewis, but who were known as men of means able to purchase for its full value the land above mentioned, to their codefendant, and especially to the defendant E. A. Blount. That for several months immediately previous to the 8th day of June, 1906, and from thence to his death, the said Henry Lewis was physically incapable of leaving his home town and going from thence anywhere for any purpose, and was thereby deprived of the means of knowing what was transpiring concerning his property, and especially that part of it above mentioned. That the defendants above named, except S. C. Diggle and S. B. Kibler, some time prior to the 8th day of June, 1906, conceived the idea of acquiring from the said Henry Lewis his said interest in the above-described land for an inadequate price by reason of the mental incapacity, want of information, and undue influence which the said Robert Lindsey had power to exercise over the said Henry Lewis. That previous to the 8th day of June, 1906, the said E. A. Blount and the said Robert Lindsey, defendants, had entered into an agreement with the defendant S. C. Diggle, by the terms of which the defendant E. A. Blount should have the right within a reasonable time (the exact time being unknown to these plaintiffs) to convey to the said S. C. Diggle the tract of land above mentioned for a sum of money more than $6 per acre (the exact amount being unknown to plaintiffs) to be paid in cash by the defendant Diggle to the defendant Blount upon the delivery of the deed from said Blount conveying said land and an abstract of title showing ownership in said Blount in said land, exclusive of said deed, all of which was well known to all of the defendants, except S. B. Kibler, and all of which was unknown to the said Henry Lewis, and knowledge of which could not have been ascertained by said Henry Lewis by the use of reasonable diligence. That $7 per acre was in fact at said time a fair price for said land, and the same could have been sold for more than $6 per acre, all of which was well known to all of the defendants and was unknown to the said Henry Lewis by reason of the facts aforesaid, and knowledge of which could not have been ascertained by him because of his aforesaid condition and situation; the said defendants, except S. B. Kibler, well knowing at the time that the said Henry Lewis was under the impression that said land was worth in the market not more than $2.50 per acre and was ignorant that it was worth more or could have been sold for more than $6 per acre, and was without capacity either to acquire said knowledge or to appreciate its meaning and consequence to himself.

"That, in pursuance of the design aforesaid made as aforesaid by the defendants aforesaid, the defendant Robert Lindsey, on or about the 8th day of June, 1906, went from his home in Nacogdoches county, Tex., to the home of the said Henry Lewis in San Augustine county, Tex., and then and there in San Augustine county, Tex., represented to the said Henry Lewis that Ben T. Wilson resided in Western Texas and was engaged in the cattle business and desired to purchase from him, the said Lewis, the said tract of land above mentioned, for the purpose of using the same as a pasture for his cattle, and that the land could be sold to the said Ben T. Wilson for that purpose alone at a price not exceeding $2.50 per acre, which was a good price for said land at that time, and could not be sold at that price for any other purpose, which said statements upon the part of the defendant Lindsey to the said Henry Lewis were made in the pursuance of the said design to acquire said property for an inadequate price, and were then and there intended to deceive, and did deceive, the said Henry Lewis, who then and there believed said statements to be true and relied on the truth thereof by reason of his

confidence in the honor and integrity of the defendant Lindsey, and being ignorant of the falsity thereof, and believing the same to be true, and being incapable of understanding the nature and consequences of his acts by reason of his condition, he, the said Henry Lewis, was then and there induced and persuaded by the defendant Robert Lindsey, who was then and there acting for himself in behalf of his codefendants, except S. B. Kibler, to execute, acknowledge, and deliver in San Augustine county, Tex., to the defendant Robert Lindsey, an apparently valid deed, conveying to the defendant Ben T. Wilson the said undivided interest of 2,082 acres above described, and thereafter on June 22d, in pursuance of said design to acquire from the said Henry Lewis his interest in said land for an inadequate price, by reason of the existence of the facts aforesaid, induced and persuaded said Henry Lewis to execute, acknowledge, and deliver in San Augustine county, Tex., to the defendant Robert Lindsey, another apparently valid deed conveying to the defendant Ben T. Wilson a said undivided interest of 138⅘ acres above described in consideration of the sum of $2.50 per acre, all of which was done under the same conditions and the same circumstances, except that at the time the last deed was executed the defendant Robert Lindsey was not present actually in person. Whereas, in fact and in truth the said defendant did not reside in Western Texas and was not engaged in the cattle business and did not desire to purchase said land for the purpose of using the same as a pasture for his cattle, and said land could not have been sold to said defendant Ben T. Wilson for that purpose, and the said $2.50 per acre was not a good price for said land at that time, and it could have been sold then to the defendant S. C. Diggle for more than $6 per acre, but of the falsity of these statements and of each and all of them the said Henry Lewis was then and there utterly oblivious, but accepted said statements as true by reason of his confidence in the said defendant Lindsey as an honorable man and his good friend and by reason also of his condition and his ignorance as aforesaid, all of which contributed to the aforesaid design of the aforesaid defendants to acquire from the said Lewis said land for an inadequate price and enable them to consummate the same by the execution and delivery, as aforesaid, of the apparently valid conveyance. That whereas the said Henry Lewis would not have executed and delivered said conveyances or either of them as aforesaid had he known or suspected the existence of the aforesaid design to acquire the said land as aforesaid, or had he known or suspected that the defendant Lindsey was acting for himself or the defendant Blount in securing the execution and delivery to the defendant Wilson of said conveyance, or

had he known or had any suspicion that said land was to be conveyed to any one for the price which the defendant Blount was to receive from the defendant Diggle as aforesaid, or had he known or suspected that said land was worth in the market as much as $2.50 per acre, or that the defendant S. C. Diggle or any one else was willing to pay $6 per acre therefor, but that he, the said Lewis, would have refused to have executed and delivered them or either of them in either contingency.

"That, according to said agreement of said defendants, the said defendant Blount was to furnish the money which was necessary to procure the execution, delivery, and acknowledgment of said deed to the defendant Wilson that the defendant Lindsey was to procure by the means aforesaid and under the circumstances aforesaid, and that, after the deed had been procured as aforesaid, the defendant Wilson was to execute, acknowledge, and deliver a conveyance of said lands to the defendant Blount, who should thereby become apparently the real owner of the said lands, and in pursuance of said agreement on the 23d day of June, 1906, the said defendant Wilson did execute and deliver to the defendant Blount an apparently valid conveyance of the lands apparently conveyed to him by the said Henry Lewis, and did then and there formally acknowledge said execution before the defendant Robert Lindsey, who was then and there a notary public of Nacogdoches county, and thereafter, in pursuance of said design as aforesaid, the defendant Blount did execute and deliver on the 31st day of August, 1906, a conveyance of said lands to the defendant Diggle for a consideration of more than $6 per acre aggregating more than $15,000 (the exact amount being unknown to these plaintiffs), thus consummating and sealing with success the aforesaid design to deprive the said Henry Lewis of his property, and to appropriate to themselves the value thereof without his knowledge or consent, and to place the apparent ownership thereof in the defendant Diggle at a profit of more than $10,000 to the defendants Blount, Lindsey, and Wilson, which said profit was made as aforesaid by the defendants last aforesaid, while said property was in their possession and the apparent ownership in their name as aforesaid. That thereafter, to wit, on the 20th day of September, 1906, the defendant Diggle for a recited consideration of $20,000 in the conveyance, the true consideration being unknown to the plaintiffs, but plaintiffs allege the true consideration to have been $20,000, upon information and belief, did execute and deliver to the defendant S. B. Kibler a deed conveying said land to him, who was then and there ignorant of the means whereby the said Henry Lewis was induced to execute and deliver the aforesaid conveyance to the defendant Wilson as aforesaid, and who then.

and there paid without notice of the aforesaid fraud and mental incapacity of the said Henry Lewis at the time the said deed was procured from him as aforesaid, a valuable consideration therefor, and thereby became an innocent purchaser under said circumstances, and is thereby protected against the legal consequences of said fraudulent acts upon the part of his codefendants. That said S. B. Kibler has acquired said lands free from taint of fraud at a price greater than the price received by the defendant Blount from the defendant Diggle to the extent of $5,000, and the said defendant Kibler is unwilling to convey said land to these plaintiffs and the other defendants to pay to said S. B. Kibler the money paid to them by him for said land as aforesaid, whereby it became impossible to restore the original position occupied by the parties before said wrongs were committed and said conveyances procured. And the said Henry Lewis in his lifetime was, and these plaintiffs, as the heirs at law of Henry Lewis, deceased, by reason of the facts aforesaid have been, compelled to affirm said contract and are entitled to actual damages from the defendants Blount, Lindsey, Wilson, and Diggle, and from each and all of them, for the difference between what was paid to the said Henry Lewis and what the defendants received for said land while in their possession, with 6 per cent. interest thereon from the date on which the said defendants received said profit and for which actual damages in the sum of $20,000 these plaintiffs sue and pray judgment."

The grounds upon which appellees undertake to sustain the judgment of the trial court sufficiently show the only question presented by this appeal. It is contended by them that the petition specially alleges that Lewis, at the time he executed the deeds in question, was of unsound mind, in fact, insane, and it is not alleged that the present owner of the land, Kibler, has placed any improvements thereon, and that therefore Kibler is not protected as an innocent purchaser. From these facts appellees draw the legal conclusion (and it must be assumed from their brief that upon this ground the trial court sustained the demurrer and exception) that the only remedy of appellants was an action against Kibler to recover the land, which action must be instituted in Hartley county where the land lies. It is not contended that the facts alleged do not authorize a recovery of the land, but that, inasmuch as the petition shows a good cause of action for the land against the present owner, appellants are confined to that remedy and cannot recover damages against the parties who are alleged to have committed the fraud. We think this fairly states the only question presented by this appeal. Certainly it could not be contended that the facts alleged would not authorize a cancellation of the deeds and a recovery of the land from any of the immediate parties to the alleged fraud, and it is not so contended by appellees.

[1] It seems to be settled law that a deed of an insane person, though voidable only and not absolutely void (Williams v. Sapieha, 94 Tex. 433, 61 S. W. 115), can be attacked by the grantor or his legal representatives and the property recovered from an innocent purchaser to whom it has been conveyed for value and without notice of the insanity of the grantor. 22 Cyc. 1173; Hull v. Louth, 109 Ind. 664, 10 N. E. 270, 58 Am. Rep. 405; Rogers v. Blackwell, 49 Mich. 192, 13 N. W. 512; Hovey v. Hobson, 53 Me. 451, 89 Am. Dec. 705; Wirebacks v. First National Bank, 97 Pa. 543, 39 Am. Rep. 821; Gates v. Carpenter, 43 Iowa, 155.

[2] This much may be conceded; but does it follow that, because appellants could have recovered the property in the hands of the present holders, they cannot elect to proceed against appellees for damages for the fraud and deceit by means of which they procured from Lewis, whom they knew to be mentally incapable, the conveyances in question? We think not. Under the allegations of the petition, appellees will be held in equity as trustees for their grantor, Lewis, as to the land conveyed. 3 Pom. Eq. 1051, 1052; Jencks v. Cook, 9 R. I. 520. The land which is, in effect, the trust fund, having been disposed of by them, appellants may elect to pursue and recover the land, or to sue appellees for the damages by reason of the alleged fraud. This is the effect of the holding of the Supreme Court in Silliman v. Gano, 90 Tex. 647, 648, 39 S. W. 559, 40 S. W. 391, and it is supported by the soundest reason and is in entire accord with the highest equity and justice. The position assumed by the demurrer is that, admitting that appellees have taken advantage of the mental imbecility of the grantor, Lewis, and by the use of fraudulent devices and representations procured from him conveyances of this land for a price grossly disproportionate to its known value, yet because he was in fact insane, which was known to them, and because of the further fact that they have succeeded in selling the property to another, who was ignorant of the fraud, and entirely innocent of any knowledge of or connection therewith, they must go free, and such purchaser, innocent in fact, be made to suffer. To state the proposition ought to be a sufficient answer to it. Appellees contend, in effect, that if Lewis had not been actually insane, but the vice in the conveyances had been merely that they had been procured by fraud, appellant's suit against them would lie, because in such case they could not recover the property in the hands of the present holder. It would be strange if the added fact that the vendor, Lewis, was in fact of unsound mind, which it is charged was known to appellees, would protect them. Without the binding authority of Silliman v. Gano, supra, we would have no hesitation in arriving at the conclusion that

the demurrer and exception were improperly sustained. Prondzinski v. Garbut, 10 N. D. 300, 86 N. W. 972; Lathrop v. Bampton, 31 Cal. 23, 89 Am. Dec. 141.

The authorities cited by appellees do not tend to support the proposition advanced by them. The point decided in Houghton v. Rice, 15 Tex. Civ. App. 561, 40 S. W. 349, 1057, was that a levy upon and sale of the property of an insane person, when it is bought by the execution creditor for a grossly inadequate sum, the amount being credited upon the debt, would be set aside, though the creditor at the time of the sale was ignorant of the fact that the execution debtor was insane. The point decided in Searcy v. Hunter, 81 Tex. 644, 17 S. W. 372, 26 Am. St. Rep. 837, was that a bona fide purchaser from the vendee of a minor does not take title against the right of the minor to disaffirm upon attaining his majority.

In McLean v. Stith, 50 Tex. Civ. App. 323, 112 S. W. 355, 356, there is an intimation that a purchaser from the vendee of an insane person having no knowledge of the insanity will not be protected as an innocent purchaser; but the facts in that case showed, and it was held by the court, that such subsequent purchaser had notice of the insanity of the vendor of his vendor, and of course could not claim to be an innocent purchaser.

None of these authorities to any extent support the action of the trial court in sustaining the demurrer and exception. We do not consider it of any importance that there was no allegation that the purchasers from appellees had placed any improvements on the land. This would have no effect on the rights of appellants as against appellees.

We have carefully examined the assignments of error and propositions advanced by appellants, and the counter propositions of appellees in their briefs, and have reached the conclusion that the trial court erred in sustaining the general demurrer and special exception referred to. It follows that the judgment should be reversed, and the cause remanded, and it has been so ordered.

Reversed and remanded.